STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

                                              Case Type:  Other Civil

| | |
|---|---|
| Jennifer Song and Scott Wertkin, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>    v.<br><br>Champion Petfoods USA, Inc. and Champion Petfoods LP,<br><br>                    Defendants. | Court File No.  _____<br><br><br><br>**<u>SUMMONS</u>** |

STATE OF MINNESOTA to the above-named Defendants:

        You are hereby summoned and required to serve upon Plaintiffs' attorneys an answer to the Complaint which is herewith served upon you within 20 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

        You are further notified that this case may be subject to Alternative Dispute Resolution pursuant to Minn. Stat. § 543.22 and Rule 114.01 of the General Rules of Practice for the District Courts.

Dated: October 17, 2018              LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                     By:  s/  Rebecca A. Peterson
                                     ROBERT K. SHELQUIST, #21310X
                                     REBECCA A. PETERSON, #0392663
                                     100 Washington Avenue South, Suite 2200
                                     Minneapolis, MN 55401
                                     Telephone: (612) 339-6900
                                     Facsimile: (612) 339-0981
                                     E-mail: rkshelquist@locklaw.com
                                              rapeterson@locklaw.com


                                     GUSTAFSON GLUEK, PLLC
                                     DANIEL E. GUSTAFSON, #202241
                                     KARLA M. GLUEK, #238399
                                     RAINA C. BORRELLI, #392127
                                     Canadian Pacific Plaza
                                     120 South 6th Street, Suite 2600
                                     Minneapolis, MN 55402
                                     Telephone: (612) 333-8844
                                     Facsimile: (612) 339-6622
                                     E-mail: dgustafson@gustafsongluek.com
                                     kgluek@gustafsongluek.com
                                     rborrelli@gustafsongluek.com



                                     ROBBINS ARROYO LLP
                                     KEVIN A. SEELY (199982)
                                     STEVEN M. MCKANY (271405)
                                     600 B Street, Suite 1900
                                     San Diego, CA 92101
                                     Telephone: (619) 525-3990
                                     Facsimile: (619) 525-3991
                                     E-mail:  kseely@robbinsarroyo.com
                                              smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:   jdepalma@litedepalma.com
          scruzhodge@litedepalma.com

ANDREWS DEVALERIO LLP
Glen Devalerio
Daryl Andrews
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
E-mail: glen@andrewsdevalerio.com
          daryl@andrewsdevalerio.com

POMERANTZ LLP
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
E-mail:  gfbruckner@pomlaw.com
          sjadams@pomlaw.com

**Attorneys for Plaintiffs**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type:  Civil

| | |
|---|---|
| Jennifer Song and Scott Wertkin, on behalf of themselves and all others similarly situated, | Court File No.  _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Champion Petfoods USA, Inc. and Champion Petfoods LP, | |
| Defendants. | |

1.      Plaintiffs Jennifer Song and Scott Wertkin, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendants Champion Petfoods USA, Inc. and Champion Petfoods LP ("Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of heavy metals and toxins in their pet food sold throughout the United States.  Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Class (defined below), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel and as to all other matters, upon information and belief. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

## DEFENDANTS MARKET THEMSELVES AS ONLY SELLING PREMIUM DOG FOOD WITH THE SIMPLE MISSION OF "TO BE TRUSTED BY PET LOVERS"

2.      Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Acana and Orijen throughout the United States, including in this District.

3.      Defendants have created a niche in the pet food market by "making biologically 'appropriate' pet food- as close to what animals would eat in nature as possible- and producing it using fresh, natural ingredients…" They then charge a premium for this purportedly higher-quality food.  The founder of the company, Peter Muhlenfeld, said, "Our core family beliefs are [] entrenched in the company, and that is to make the very best food."[1]

4.      Defendants tout that "Biologically Appropriate™ ORIJEN represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein[]" and that it is "trusted by pet lovers everywhere." [2]

5.      Defendants' packaging and labels further emphasize fresh, quality, and properly sourced ingredients and even declares its dog food has "ingredients we love":

---

[1] The Globe and Mail, "How once-tiny pet-food maker took a bite of the global market," Jan. 16, 2018,https://www.theglobeandmail.com/report-on-business/small-business/canadian-powerhouse-export-your-dog-is-eating-it/article37605774/ (last visited Feb. 6, 2018).
[2] https://www.orijen.ca/us/



6.     Yet nowhere in the labeling, advertising, statements, warranties and/or packaging do Defendants disclose that the Contaminated Pet Foods (defined herein) contain levels of arsenic, mercury, lead, cadmium and/or BISPHENOL A ("BPA") — all known to pose health risks to humans and animals, including dogs: [3]

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Regionals Wild Atlantic New England Fish and Fresh | 3256.40 | 32.50 | 113.00 | 51.20 | 249.30 |

---

[3] All the below pet food collectively is referred to as the "Contaminated Dog Foods." Discovery in this action likely will lead to the identification of additional products based on Defendants' public acknowledgment that their foods do contain heavy metals.

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Greens Dry Dog Food | | | | | |
| Orijen Six Fish With New England Mackerel, Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Dog Food | 3169.80 | 39.50 | 200.50 | 54.90 | 38.70 |
| Orijen Original Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 907.60 | 0.00 | 93.20 | 10.80 | 489.80 |
| Orijen Regional Red Angus Beef, Boar, Goat, Lamb, Pork, Mackerel Dry Dog Food | 849.40 | 43.60 | 123.10 | 21.40 | 167.70 |
| Acana Regionals Meadowland with Poultry, Freshwater Fish and Eggs Dry Dog Food | 846.40 | 82.70 | 37.50 | 8.70 | 489.00 |

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Regionals Appalachian Ranch with Red Meats and Freshwater Catfish Dry Dog Food | 358.20 | 82.90 | 32.50 | 14.90 | 336.70 |
| Acana Regionals Grasslands with Lamb, Trout, and Game Bird Dry Dog Food | 262.80 | 0.00 | 30.60 | 9.60 | 305.00 |
| Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food | 1066.50 | 37.70 | 62.10 | 21.70 | 138.50 |
| Acana Singles Duck and Pear Formula Dry Dog Food | 523.40 | 102.70 | 30.90 | 15.40 | 537.40 |
| Acana Singles Lamb and Apple Formula Dry Dog Food | 401.20 | 73.20 | 35.00 | 3.20 | 423.40 |

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Heritage Free-Run Poultry Formula Dry Dog Food | 292.90 | 62.20 | 27.80 | 3.30 | 290.20 |
| Acana Heritage Freshwater Fish Formula Dry Dog Food | 977.70 | 0.00 | 56.20 | 27.40 | 486.80 |
| Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead Trout Wet Dog Food | 23.13 | 6.02 | 27.64 | 5.35 | 12.26 |
| Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild-Caught Fish, Eggs Wet Dog Food | 23.21 | 13.41 | 7.74 | 9.45 | 7.33 |
| Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild | 102.66 | 0.00 | 23.40 | 19.60 | 16.85 |

| Product Name Boar, Pork, Bison Wet Dog Food | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish Dry Dog Food | 2173.90 | 39.70 | 92.20 | 58.80 | 55.10 |
| Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry Dog Food | 1628.50 | 40.30 | 134.50 | 43.60 | 471.80 |
| Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 791.20 | 32.20 | 87.20 | 12.20 | 490.80 |
| Acana Singles Mackerel and Greens Formula Dry Dog Food | 1510.70 | 40.10 | 112.20 | 29.60 | 251.10 |
| Acana Heritage | 384.80 | 58.30 | 24.40 | 6.40 | 1731.90 |

| Product Name Meats Formula Dry Dog Food | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Singles Pork and Squash Formula Dry Dog Food | 373.70 | 57.60 | 25.60 | 4.00 | 329.60 |

7.      Defendants warrant, promise, represent, label and/or advertise that the Contaminated Pet Foods are free of any heavy metals and/or chemicals like BPA by assuring the food represents an evolutionary diet that mirrors that of a wolf – free of anything "nature did not intend for your dog to eat."



8.      Defendants assert that: "Virtually All Of The Nutrients In Acana Are Natural And Not Synthetic."[4] Defendants make a similar claim to the Orijen Dog Foods in maintaining that that the main source of any nutrient in Orijen is from a natural source.[5]

9.      Defendants further warrant, promise, represent, advertise and declare that the Contaminated Dog Foods are made with protein sources that are "Deemed fit for human consumption:"



---

[4] https://acana.com/wp-content/uploads/2015/10/DS-ACANA-Dog-Brochure-002.pdf
[5] https://www.orijen.ca/us/foods/dog-food/dry-dog-food/tundra/

**THE INCLUSION OF HEAVY METALS, BPA AND ANY OTHER CHEMICALS AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER BASED ON THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE**

### *Heavy Metals*

10.   Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).[6]

11.   Moreover, the FDA is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[7]

12.   The Contaminated Dog Foods also contain lead, which is another carcinogen and developmental toxin known to cause health problems.  Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

13.   The Contaminated Dog Foods also contain mercury, which can cause damage to the cardiovascular system, nervous system, kidneys, and digestive tract in dogs.

---

[6] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers.  *See, e.g.*, Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.

[7] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

Continued exposure can also injure the inner surfaces of the digestive tract and abdominal cavity, causing lesions and inflammation. There have also been reports of lesions in the central nervous system (spinal cord and brain), kidneys, and renal glands. [8]

14.     Finally, the Contaminated Dog Foods contain cadmium which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen. [9]

15.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals. [10]

16.     Despite the known risks of exposure to these heavy metals, Defendants have negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods without disclosing they contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiffs. Indeed, Defendants have publicly acknowledge that consumers "have deep feelings and a sense of responsibility for the well-being of their dogs and cats." [11]

---

[8] https://wagwalking.com/condition/mercury-poisoning
[9] https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15
[10] https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm
[11] https://www.theglobeandmail.com/amp/report-on-business/small-business/canadian-powerhouse-export-your-dog-is-eating-it/article37605774/

17.    Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog, making it the main, if not only, source of food for the dog.  This leads to repeated exposure of the heavy metals to the dog.

18.    Defendants have wrongfully and misleadingly advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

19.    Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendants to market the Contaminated Dog Foods as healthy and safe to induce consumers, such as Plaintiffs, to purchase the products.  For instance, Defendants market the Contaminated Dog Foods as "Biologically Appropriate," using "Fresh Regional Ingredients" comprised of 100 percent meat, poultry, fish, and/or vegetables, both on the products' packaging and on Defendants' websites.

20.    Moreover, Defendants devote significant web and packaging space to the marketing of their DogStar® Kitchens, which they tell consumers "are the most advanced pet food kitchens on earth, with standards that rival the human food processing industry."

21.    Defendants state on their website that the Orijen pet foods "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive."  Defendants further promise on the products' packaging and on its website

that its Orijen and Acana foods are "guaranteed" to "keep your dog happy, healthy, and strong."

22.     Using such descriptions and promises makes Defendants' advertising campaign deceptive based on presence of heavy metals in the Contaminated Dog Foods. Reasonable consumers, like Plaintiffs, would consider the mere inclusion of heavy metals in the Contaminated Dog Foods as a material fact in considering what pet food to purchase. Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy, safe, and free of contaminants such as arsenic and lead.  Moreover, Defendants knew or should have reasonably expected that the presence of heavy metals in its Contaminated Dog Foods is something an average consumer would consider in purchasing dog food.    Defendants' representations and omissions are false, misleading, and reasonably likely to deceive the public.

23.     Moreover, a reasonable consumer, such as Plaintiffs and other members of the Classes (as defined herein), would have no reason to not believe and/or anticipate that the Contaminated Dog Foods are ""Biologically Appropriate" foods that use "Fresh Regional Ingredients" consisting only of meat, poultry, fish, and vegetables.   Non-disclosure and/or concealment of the toxins in the Contaminated Dog Foods coupled with the misrepresentations alleged herein by Defendants suggesting that the food provides complete health and is safe is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and members of the classes not have bought if the true quality and

ingredients were disclosed.  As a result of these false or misleading statements and omissions, Defendants have generated substantial sales of the Contaminated Dog Foods.

24.     The expectations of reasonable consumers and deception of these consumers by Defendants' advertising, misrepresentations, packaging, labeling is further highlighted by the public reaction to this lawsuit as reported by various websites.

25.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers within Minnesota who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of heavy metals that pose a known risk to both humans and animals in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

### *Bisphenol A ("BPA")*

26.     The dangers of BPA in human food are recognized by the FDA, along with various states.  For instance, manufacturers and wholesalers are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally added BPA.

27.     Still, certain Contaminated Dog Foods are sold by Defendants that contain levels of BPA—an industrial chemical that "'is an endocrine disruptor. It's an industrial chemical that according to Medical News Today' . . . interferes with the production, secretion, transport, action, function and elimination of natural hormones.'"  BPA has been

linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems. [12]

28.     Despite the presence of this harmful chemical, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Contaminated Dog Foods as made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables.   Indeed, each bag prominently displays the percentage of these ingredients on the front.

29.     Defendants' website and packaging also warrants, claims, features, represents, advertises, or otherwise markets that its products are natural. In fact, Orijen's slogan is "Nourish as Nature Intended."



---

[12] Christian Nordquist, *Bisphenol A: How Does It Affect Our Health?* Medical News Today (May 24, 2017), https://www.medicalnewstoday.com/articles/221205.php.

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

30.     In promoting their promise, warranty, claim, representation, advertisement, or otherwise marketing that the Contaminated Dog Foods are safe and pure, Defendants further assure its customers:

> Equipped with state-of-the-art fresh food processing technologies, our DogStar® kitchens feature 25,000 square feet of cooler space, capable of holding over 500,000 pounds of fresh local meats, fish and poultry, plus fresh whole local fruits and vegetables.

> Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from when they were harvested.

31.     To this end, Defendants' websites further warrants, claims, features, represents, advertises, or otherwise markets that the Contaminated Dog Foods are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality:

> "[O]ur unique Votator Heat Exchangers bring chilled fresh ingredients to room temperature without introducing water or steam, which enables us to add even more fresh meats into our foods."

> "Referred to as 'the most significant preconditioning development for extrusion cooking in the last 20 years,' our High Intensity Preconditioners were custom-built for DogStar®, feeding fresh meats from the Votators to Extruders at rates previously unheard of, and without high temperatures."

> "At the heart of our kitchens is a twin thermal extruder which is fed fresh ingredients from our High Intensity Preconditioner.

> The first of its kind in North America, it took 11 months to build, and features custom steam injection to enable very high fresh meat inclusions and a gentle cooking process which helps further reduce the carbohydrates in our foods and preserves their natural goodness."

32.     Thus, Defendants engaged in deceptive advertising and labeling practice by expressly warranting, claiming, stating, featuring, representing, advertising, or otherwise

marketing on Acana and Orijen labels and related websites that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables when they contain the non-naturally occurring chemical BPA.

33.     Based on these false representations, Defendants charge a premium, knowing that the claimed natural make-up of the Contaminated Dog Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive dog food.  By negligently and/or deceptively representing, marketing, and advertising the Contaminated Dog Foods as natural, fit for human consumption, fit for canine consumption, natural, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for natural pet food products.

34.     Plaintiffs bring this action individually and on behalf of all other similarly situated consumers within Minnesota who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of BPA that pose a known risk to both humans and animals in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

## JURISDICTION AND VENUE

35.     This is a civil case in which the Court has original jurisdiction under the Constitution of the State of Minnesota, Article 6, §3.

36.     Plaintiffs do not assert any claims arising under federal law.

37.     The Court has personal jurisdiction over Defendants because they have transacted substantial business in Minnesota, and have committed acts inside and outside of Minnesota that caused injury or property damage in Minnesota to Minnesota residents.

38.     Venue is proper in Hennepin County under Minn. Stat. §§ 542.01, 542.02, and 542.11 because Plaintiff Song resides in this district and suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

39.     Plaintiff Jennifer Song ("Plaintiff Song") is, and at all times relevant hereto has been, a citizen of the state of Minnesota who resides in Hennepin County.  Plaintiff Song purchased the following Contaminated Dog Foods and fed the food to her 12-year-old pug, Suzy, and a recently rescued 6-year-old Pomeranian mix, Bee: Orijen Six Fish With New England Mackerel, Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Dog Food; Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney Lamb, Yorkshire Pork & Wild Mackerel, Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food, Acana Regionals Grasslands with Lamb, Trout,

and Game Bird Dry Dog Food, Acana Regionals Wild Atlantic New England Fish and Fresh Greens Dry Dog Food, Acana Regionals Meadowland with Poultry, Freshwater Fish and Eggs Dry Dog Food, Acana Regionals Appalachian Ranch with Red Meats and Freshwater Catfish Dry Dog Food and Orijen Original Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food. Plaintiff Song began purchasing the Contaminated Dog Foods on or around November 6, 2016 and continued to purchase approximately two 4.5-pound bags monthly (priced at around $22.00 per bag) until approximately February 2018 when she discovered that the food was contaminated. Plaintiff purchased the Contaminated Dog Foods from Chuck & Don's in Minnesota. Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the products the nutritional claims on the packaging, which she relied on in deciding to purchase the Contaminated Dog Foods. During that time, based on the false and misleading claims, warranties, representations, advertisements and other marketing by Defendants, Plaintiff was unaware that the Contaminated Dog Foods contained any level of heavy metals, chemicals or toxins and would not have purchased the food if that was fully disclosed. Plaintiff Song was injured by paying a premium for the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals and toxins.

40.     Plaintiff Scott Wertkin ("Plaintiff Wertkin") is, and at all times relevant hereto has been, a citizen of the state of Minnesota who resides in Ramsey County. Plaintiff Wertkin purchased the following Contaminated Dog Foods and fed the food to his five-year old golden retriever Poodle Mix, Butter: Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food; Orijen Six Fish With New England Mackerel,

Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Dog Food; Acana Singles Limited Ingredient Diet Duck and Pear Formula Grain Free Dry Dog Food; and Acana Lamb and Apples singles Formula. Plaintiff Wertkin began purchasing the Contaminated Dog Foods on or around October 2013 and continued to purchase the food every 4-6 weeks until approximately February 2018 when he discovered that the food was contaminated. Plaintiff Wertkin purchased the Contaminated Dog Foods from Chuck & Don's in St. Paul, Minnesota. Prior to purchasing the Contaminated Dog Foods, Plaintiff Wertkin saw the products the nutritional claims on the packaging, which he relied on in deciding to purchase the Contaminated Dog Foods. During that time, based on the false and misleading claims, warranties, representations, advertisements and other marketing by Defendants, Plaintiff Wertkin was unaware that the Contaminated Dog Foods contained any level of heavy metals, chemicals or toxins and would not have purchased the food if that was fully disclosed. Plaintiff Wertkin was injured by paying a premium for the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals and toxins.

41.     As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what was promised. They paid the premium price on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was healthy, superior quality, natural, and safe for dogs to ingest. Plaintiffs would not have paid this money had they known that the Contaminated Dog Foods contained any levels of the heavy metals, chemicals and/or toxins. Plaintiffs

were further injured because the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiffs encounter the Contaminated Dog Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

42.    Defendant Champion Petfoods USA Inc. ("Champion USA") is incorporated in Delaware. Its headquarters and principal place of business, as of March 2016, is located at 12871 Bowling Green Road, Auburn, KY 42206. Since that time, all Contaminated Pet Foods sold in the United States are manufactured, sourced and sold by Champion USA.

43.    Defendant Champion Petfoods LP ("Champion Canada") is a Canadian limited partnership with its headquarters and principal place of business located at 11403-186 St NW, Edmonton, Alberta T5S 2W6. Defendant Champion Canada wholly owns, operates, and/or controls Defendant Champion USA. Prior to March 2016, all Contaminated Pet Foods sold in the United States were manufactured, sourced and sold by Champion Canada.

44.    Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the dog food brand names Orijen and Acana throughout the United States, including in this District, during Class Period (defined below). The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by Plaintiffs, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing,

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, *i.e.*, Plaintiffs and the Classes, into purchasing the Contaminated Dog Foods. Defendants own, manufacture, and distribute the Contaminated Dog Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

## FACTUAL ALLEGATIONS

### *The Contaminated Dog Foods*

45.    The Contaminated Dog Foods include the following:

a.   Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats &
Freshwater Catfish





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

b.  Acana Regionals Grasslands with Grass-Fed Kentucky Lamb, Freshwater

Trout & Game Bird





c.  Acana Regionals Meadowland with Free-Run Poultry, Freshwater Fish, and

Nest-Laid Eggs





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

   d.  Acana Regionals Wild Atlantic with New Wild New England Fish & Fresh

       Kentucky Greens





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

e.  Orijen Original with Fresh Free-Run Chicken and Turkey, Wild-Caught

Fish and Nest-Laid Eggs





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

f.   Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney

Lamb, Yorkshire Pork & Wild Mackerel





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

g.  Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork,

Bison Dry Dog Food



h.  Orijen Six Fish with New England Mackerel, Herring, Flounder, Redfish, Monkfish and Silver Hake





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

i.   Acana Singles Duck and Pear Formula Dry Dog Food





j.   Acana Singles Lamb and Apple Formula Dry Dog Food





k.  Acana Heritage Free-Run Poultry Formula Dry Dog Food





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

l.  Acana Heritage Freshwater Fish Formula Dry Dog Food





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

m. Orijen Tundra Freeze-Dried Venison, Elk, Bison, Quail, Steelhead Trout

Wet Dog Food



n. Orijen Adult Dog Freeze-Dried Chicken, Turkey, Wild Caught Fish, Eggs

Wet Dog Food



Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

o.  Orijen Regional Red Freeze-Dried Angus Beef, Ranch Raised Lamb, Wild
Boar, Pork, Bison Wet Dog Food



p.  Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork,
Bison Dry Dog Food



q.  Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish Dry

Dog Food



r.  Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry Dog

Food



Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

s.  Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry

Dog Food





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

t.   Acana Singles Mackerel and Greens Formula Dry Dog Food





u.  Acana Heritage Meats Formula Dry Dog Food





Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

v.  Acana Singles Pork and Squash Formula Dry Dog Food





*Heavy Metals Create Known Risks When Ingested*

46.     Toxins like arsenic, mercury, cadmium and lead can cause serious illness to humans and animals.  A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

47.     Arsenic is a semi-metal element in the periodic table.  It is odorless and tasteless.  Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals.  Arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds. Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors. The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons.  Some of these cancellations were based on voluntary withdrawals by producers.  For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order.  In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable."  Arsenic is an element—it does not degrade or disappear.

48.     Inorganic arsenic is a known cause of human cancer.  The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled

arsenic.  By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase the incidence of several internal cancers.  The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

49.     Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

50.     In recognition of the dangers of lead, the State of Minnesota has enacted the Lead Poisoning Prevention Act.  In 2014, the Minnesota Commissioner of Health defined, under Minnesota Statute 144.9501, an "elevated blood lead level" as "a diagnostic blood lead test with a result that is equal to or greater than five micrograms of lead per deciliter of whole blood in any person."

51.     The State of Minnesota also recognizes the dangers of arsenic and prohibits the sale or use of "any fertilizer containing more than 500 parts per million by weight of arsenic."

43

52.     The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic. *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

53.     Mercury is a known toxin that creates health risks to both humans and animals. The impact of the various ways humans and animals are exposed and ingest mercury has been studied for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health risks to both humans and animals. [13]

54.     Based on the toxicity and risks of Mercury, regulations have been enacted at both the Federal and state level.

55.     Cadmium is likewise a known toxin that creates risk when ingested by animals or humans. It has been specifically noted that "Kidney and bone effects have [] been observed in laboratory animals ingesting cadmium.  Anemia, liver disease, and nerve or brain damage have been observed in animals eating or drinking cadmium." [14]

***Defendants Falsely Advertise the Contaminated Dog Foods as Nutritious, Superior Quality, Pure, and Healthy While Omitting Any Mention of the Heavy Metals, as Well as Claim the Foods Are Natural, Pure, and Safe Despite the Inclusion of the Industrial Chemical BPA***

56.     Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their extensive Acana and Orijen lines of dry and freeze-dried pet food products across the United States, including the Contaminated Dog Foods.

---

[13] https://www3.epa.gov/airtoxics/112nmerc/volume5.pdf
[14] https://www.atsdr.cdc.gov/ToxProfiles/tp5-c1-b.pdf

57.     Defendants tout themselves as "a leader and innovator in making pet foods, Champion works to our own standards. These are our standards, not USDA, not FDA, not CFIA. These agencies set minimum standards which we exceed exponentially. Why?  Because our Mission and our Values dictate that we do, and that's what pet lovers expect from us.

58.     In 2016, Defendants opened DogStar Kitchens, a 371,100 square foot production facility on 85 acres of land outside Bowling Green, KY. This facility has the capacity to produce up to 220 million pounds of Acana and Orijen pet food per year. The CEO of Champion Pet Foods, Frank Burdzy, said, "The US is our fastest growing market."[15] Prior to this facility's construction, Defendants' Acana and Orijen products were exclusively manufactured in Canada. Since that facility began production, all Acana and Orijen foods sold in the United States are manufactured at the DogStar Kitchens facility.

59.     Defendants have represented that its DogStar Kitchens meet the European Union's standard for pet food ingredients processing. They have also represented a commitment to using fresh and local ingredients, including wild-caught fish.

60.     Defendants have represented that its DogStar Kitchens meet the European Union's standard for pet food ingredients processing. They have also represented a commitment to using fresh and local ingredients, including wild-caught fish.

61.     Likewise, by warranting, claiming, stating, featuring, representing, advertising or otherwise marketing that Orijen and Acana foods, including the

---

[15] https://www.foodengineeringmag.com/articles/95994-champion-petfoods-opens-dogstar-kitchens

Contaminated Dog Foods, are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants had a known duty to ensure that there were no chemicals included in the Contaminated Dog Foods. In fact, Defendants offered further assurances by representing that the quality control over the manufacturing of the Contaminated Dog Foods as a rigid process free of outsourcing.

62.     Defendants specifically promise on their website, "[W]e prepare ACANA ourselves, in our own kitchens, where we oversee every detail of food preparation — from where our ingredients come from, to every cooking, quality and food safety process." Similarly, Defendants promise that their "Dogstar® Kitchens have access to a myriad of specialty family farms, with whom we partner for our supply of trusted ingredients." Finally, Defendants' promise "[s]tandards that rival the human food processing industry for authenticity, nutritional integrity, and food safety." According to the Orijen and Acana websites, Defendants use "feature state-of-the-art fresh food processing technologies." As such, Defendants knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of BPA in their products.

63.     The Contaminated Dog Foods are available at numerous retail and online outlets in the United States, including Minnesota.

64.     The Contaminated Dog Foods are widely advertised, and Defendants employ a Chief Marketing Officer, a Vice President for Customer Engagement, and a Director of Marketing in both the United States and Canada.

65.     The official websites for Acana and Orijen display the Contaminated Dog Foods; descriptions and full lists of ingredients for the Contaminated Dog Foods and includes the following promises:



**AWARD-WINNING FOODS AND TREATS**

Biologically Appropriate™ ORIJEN represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein.

ORIJEN features unmatched inclusions of fresh free-run poultry, whole nest-laid eggs, whole wild-caught fish and ranch-raised meats – farmed or fished in our region by people we know and trust, and delivered to our kitchens daily so they're brimming with goodness.

Trusted by pet lovers everywhere, award-winning ORIJEN foods and treats are guaranteed to keep your cherished dogs and cats happy, healthy and strong!

**AWARD-WINNING BIOLOGICALLY APPROPRIATE**™

OUR MISSION IS CLEAR AND STRONG

We make Biologically Appropriate™ dog and cat foods from Fresh Regional Ingredients and we make them from start to finish in our very own award-winning kitchens.

Our mission represents a new standard in pet food, designed to nourish your dog and cat in two ways. First, according to its natural evolution to a meat and protein-rich diet. Second, using meats, poultry, eggs and fish that are sustainably ranched, farmed or fished by local suppliers and delivered to our kitchens fresh each day.

We think you'll love **ACANA**. More importantly, we think your dogs and cats will too.

66.     Defendants' websites repeat the false and misleading claims, warranties, representations, advertisements, and other marketing about the Contaminated Dog Foods benefits, quality, purity, and natural make-up, without any mention of the heavy metals and/or BPA they contain.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.[16]

---

[16] Statista, *Natural and Organic Pet Food Sales in the U.S. from 2009 to 2019,* The Statistics Portal (accessed Oct. 25, 2017).  https://www.statista.com/statistics/548957/us-sales-of-natural-and-organic-pet-food/



67.    Moreover, Defendants have themselves acknowledged the importance of

quality dog food to the reasonable consumer:

> "Our No. 1 mandate is BAFRINO – biologically appropriate, fresh regional
> ingredients, never outsourced," said Frank Burdzy, president and chief executive
> officer of Champion Petfoods in Canada, in an interview with the Daily News
> Monday prior to housewarming activities outside and inside the kitchens.

> "We build relationships with our suppliers and farms and fisheries. We are trusted
> by pet owners," Burdzy said.[17]

68.    As a result of Defendants' omissions, a reasonable consumer would have no

reason to suspect the presence of heavy metals and/or BPA in the Contaminated Dog Foods

without conducting his or her own scientific tests, or reviewing third-party scientific testing

of these products.

---

[17] Mason, C., *Champion Petfoods DogStar Kitchens holds housewarming*, BOWLING GREEN
DAILY NEWS (Jan. 5, 2016) *available at* http://www.bgdailynews.com/news/champion-petfoods-
dogstar-kitchens-holds-housewarming/article_bf34275d-2242-5f3f-a9cc-
14174235acc1.html?utm_medium=social&utm_source=email&utm_campaign=user-share (last
accessed March 1, 2018).

69.     However, after conducting third-party scientific testing, it is clear that the Contaminated Dog Foods does in fact contain levels both heavy metals and/or BPA.

### *Defendants' Statements and Omissions Violate Minnesota Laws*

70.     Minnesota laws are designed to ensure that a company's claims about its products are truthful and accurate.  Defendants violated these state laws by negligently, recklessly, and/or intentionally incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe for consumption and by not accurately detailing that the products contain the toxic heavy metals and/or BPA.  Defendants misrepresented that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive;" and are "guaranteed" to "keep your dog happy, healthy, and strong."

71.     Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiffs to plead reliance upon each advertised misrepresentation.

72.     Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients such as arsenic and lead. Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods are natural, pure, and safe despite the presence of BPA in the food.

### *Plaintiffs' Reliance Was Reasonable and Foreseen By Defendants*

73.     Plaintiffs reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

74.     Plaintiffs relied upon Defendants' false and/or misleading representations alleged herein, including the websites and the Contaminated Dog Foods' labels and packaging in making their purchasing decisions.

75.     Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase.  Here, Plaintiffs relied on the specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[ing] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive;" and were "guaranteed" to "keep your dog happy, healthy, and strong" with no disclosure of the inclusion of heavy metals, including arsenic or lead, and BPA.

### *Defendants' Knowledge and Notice of Their Breaches of Their Express and Implied Warranties*

76.     Defendants had sufficient notice of their breaches of express and implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Dog Foods.

77.     Additionally, Defendants received notice of the contaminants in their dog and cat food, including the Contaminated Dog Foods, through the Clean Label Project, which found higher levels of heavy metals in its dog and cat food products. In fact, Defendants actually responded to the Clean Label Project's findings. Defendants spoke with the Clean Label Project by phone regarding its findings and methodology, which showed that Orijen pet foods have high levels of heavy metals compared to other pet foods. The Clean Label Project informed Defendants that it compared Orijen pet foods to competitors' products and gave them a one-star rating, meaning they contained higher levels of contaminants than other products on the market.[18] Defendants' direct contact with the Clean Label Project demonstrates its knowledge about the Contaminated Dog Foods.

78.     Defendants also issued a white paper in defense of the Clean Label Project findings that acknowledges that their products contain heavy metals.[19] In that same White Paper, Defendants state "[w]e systematically test ORIJEN and ACANA products for heavy metals (arsenic, cadmium, lead and mercury) at two third-party laboratories."

79.     The White Paper discusses the sources of arsenic, cadmium, lead and mercury, and what Defendants contend to be acceptable levels of those heavy metals in pet food.

80.     Defendants did not widely disseminate this White Paper or direct consumers to this White Paper. Moreover, Defendants did not change their packaging or labeling to

---

[18] Clean Label Project, "Orijen: Why Aren't You Listening to Your Customers?" http://www.cleanlabelproject.org/orijen-customers/ (last visited Feb. 6, 2018).
[19] http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf

include a disclaimer that the Contaminated Dog Foods contain any levels of the heavy metals or include a copy of the White Paper findings on the packaging or labeling. Finally, there is no disclosure as to whether the Contaminated Dog Foods tested were manufactured in the United States or Canada.

81.     Defendants likewise had knowledge of the potential risk and inclusion of BPA in their Contaminated Dog Foods. Defendants have publicly stated they ask their suppliers if the packaging contains BPA while at the same time admitting that they in fact do not perform any tests to confirm that the Contaminated Dog Foods are BPA free. Moreover, Defendants no longer boast about "exceeding" regulations when asked if the Contaminated Pet Foods are BPA free.

### *Privity Exists with Plaintiffs and the Proposed Class*

82.     Defendants knew that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

83.     Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiffs and the proposed Class.

84.     Defendants directly marketed to Plaintiffs and the proposed Class through statements on their website, labeling, advertising, and packaging.

85.     Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action individually and on behalf of the following Class

pursuant to Rules 23.02(a)-(c) of the Minnesota Rules of Civil Procedure:

> All persons who are citizens of the State of Minnesota who, from July 1,
> 2013, to the present, purchased the Contaminated Dog Foods for household
> or business use, and not for resale (the "Class").

87.     Excluded from the Class are the Defendants, any parent companies,

subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-

conspirators, all governmental entities, and any judge, justice, or judicial officer presiding

over this matter.

88.     This action is brought and may be properly maintained as a class action.

There is a well-defined community of interests in this litigation and the members of the

Class are easily ascertainable.

89.     The members in the proposed Class are so numerous that individual joinder

of all members is impracticable, and the disposition of the claims of the members of all

Classes members in a single action will provide substantial benefits to the parties and

Court.

90.     Questions of law and fact common to Plaintiffs and the Class include, but are

not limited to, the following:

> a.   whether Defendants owed a duty of care to Plaintiffs and the Class;
>
> b.   whether Defendants knew or should have known that the Contaminated Dog
>      Foods contained heavy metals;

c.   whether Defendants knew or should have known that the Contaminated Dog Foods contained BPA;

d.   whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

e.   whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are healthy, superior quality, nutritious and safe for consumption;

f.   whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural;

g.   whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are pure and safe;

h.   whether Defendants wrongfully represented and continue to represent that the manufacturing of the Contaminated Dog Foods is subjected to rigorous standards, including temperature;

i.   whether Defendants wrongfully failed to state that the Contaminated Dog Foods contained heavy metals and/or BPA;

j.   whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

k.   whether those representations are likely to deceive a reasonable consumer;

l.   whether a reasonable consumer would consider the presence of heavy metals and/or BPA as a material fact in purchasing pet food;

m.   whether Defendants had knowledge that those representations were false, deceptive, and misleading;

n.   whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

o.   whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic and/or lead is material to a reasonable consumer;

p.  whether Defendants' representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

q.  whether Defendants violated Minnesota laws;

r.  whether Defendants breached their express warranties;

s.  whether Defendants breached their implied warranties;

t.  whether Defendants engaged in unfair trade practices;

u.  whether Defendants engaged in false advertising;

v.  whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

w.  whether Plaintiffs and the members of the Class are entitled to actual, statutory, and

x.  whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

91.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

92.  Plaintiffs' claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

93.  Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained

counsel competent and experienced in class action, consumer protection, and false advertising litigation.

94.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

95.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

96.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Minnesota Commercial Feed Law Minn. Stat. § 25.31, *et seq.*
Against Defendants on Behalf of the Class**

97.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

98.     The Contaminated Dog Foods manufactured, distributed, marketed, and sold by Defendants are "commercial feed" within the meaning of the Minnesota Commercial Feed Law (MCFL).

99.     The Contaminated Dog Foods are "misbranded", within the meaning of the MCFL, because it is, as described above, the Contaminated Dog Foods are advertised and marketed in a false, misleading, and deceptive manner with respect to the ingredients, composition, and suitability for consumption.

100.   The Contaminated Dogs Foods are "adulterated", within the meaning of the MCFL, because:

    a.   They contain poisonous and deleterious substances rendering them injurious to the health of pets; and

    b.   Their composition and quality fall below and differ from that which their labels purport and represent to process.

101.   Defendants' manufacture and distribution of these adulterated and misbranded Contaminated Dog Foods are prohibited by and violations of the MCFL.

102.   As a result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiffs and the Class.

103.   As a direct and proximate result of Defendants' violations of the MCFL, Plaintiffs and the Class have been injured, and that harm will continue unless Defendants are enjoined from manufacturing, distributing, marketing and selling the misbranded and adulterated Contaminated Dog Foods described herein.

104.   Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiffs and the Class seek actual damages, equitable relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MCFL.

## COUNT II

### Violation of Minnesota Unlawful Trade Practices Act Minn. Stat. § 325D.13, *et seq.* Against Defendants on behalf of the Minnesota Class

105.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

106.    Defendants are "persons" within the meaning of the Minnesota Unlawful Trade Practices Act (MUTPA).

107.    Defendants violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Contaminated Dog Foods by falsely claiming, on both the labels and their websites, that their Contaminated Dog Foods are:

    a.    natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

    b.    contain "only 1 supplement – zinc";

    c.    "provid[e] a natural source of virtually every nutrient your dog needs to thrive;" and

    d.    "guaranteed to keep your dog healthy, happy and strong."

108.    Defendants knew or should have known that the Contaminated Dog Foods did not have the quality and ingredients described above because they contain levels of various heavy metals and/or BPA.

109.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Class with respect to the Contaminated Dog Foods' quality, ingredients, and suitability for consumption by dogs.

110.    Defendants intended that Plaintiffs and the Class would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Contaminated Dog Foods' quality, ingredients, and suitability for consumption by dogs.

111.    Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

112.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiffs and any reasonable consumer would have considered them in deciding whether to purchase the Contaminated Dog Foods.  Had Plaintiffs known the Contaminated Dog Foods did not have the quality and ingredients advertised by Defendants, they would not have purchased the Contaminated Dog Foods.

113.    Defendants intended that Plaintiffs would rely on the deception by purchasing the Contaminated Dog Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

114.    Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

115.    As a result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiffs and the Class.

116.   As a direct and proximate result of Defendants' violations of the MUTPA, Plaintiffs and the Class have been injured, and that harm will continue unless Defendants are enjoined from misrepresenting the quality and ingredients of their Contaminated Dog Foods described herein.

117.   Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUTPA.

## <u>COUNT III</u>

### Violation of Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. § 325D.43, *et seq.*
### Against Defendants on behalf of the Class

118.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

119.   Defendants are "persons" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

120.   Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by:

   a.   representing that their Contaminated Dog Foods have characteristics, ingredients, uses, and benefits that they do not have;

   b.   representing that their Contaminated Dog Foods are of a superior standard, quality, and grade when they contain levels of various heavy metals and/or BPA; and

   c.   representing that their Contaminated Dog Foods are of a natural when they contain BPA.

121.    Defendants knew or should have known that the Contaminated Dog Foods did not have the ingredients, uses, and benefits described herein because they contain levels of various heavy metals and/or levels of BPA.

122.    Defendants knew or should have known that the Contaminated Dog Foods were not of a superior standard, quality, or grade because they contain levels of various heavy metals and/or BPA that a reasonable consumer would consider material.

123.    Defendants knew or should have known that the Contaminated Dog Foods were not natural because they contain material levels of BPA.

124.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Class with respect to the Contaminated Dog Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by dogs.

125.    Defendants intended that Plaintiffs and the Class would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Contaminated Dog Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by dogs.

126.    Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

127.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiffs and any reasonable consumer would have considered them in deciding whether to purchase the Contaminated Dog Foods.  Had Plaintiffs known the Contaminated

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

Dog Foods did not have the quality and ingredients advertised by Defendants, they would not have purchased the Contaminated Dog Foods.

128.   Defendants intended that Plaintiffs and the Class would rely on the deception by purchasing the Contaminated Dog Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

129.   Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

130.   As a result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of levels of heavy metals and BPA.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiffs.

131.   As a direct and proximate result of Defendants' violations of the MUDTPA, Plaintiffs and the Class have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by dogs of their Contaminated Dog Foods described herein.

132.   Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## COUNT IV

**Violation of Minnesota False Statement in Advertising Act
Minn. Stat. § 325F.67,** *et seq.*
**Against Defendants on Behalf of the Class**

133.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

134.   Plaintiffs purchased "goods", specifically the Contaminated Dog Foods discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act (FSAA).

135.   Plaintiffs purchased the Contaminated Dog Foods through advertising that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendants that were untrue, deceptive, and misleading.

136.   By engaging in the conduct herein, Defendants violated and continue to violate Minn. Stat. § 325F.67.

137.   Defendants' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Contaminated Dog Foods are:

   a.   natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

   b.   contain "only 1 supplement – zinc";

   c.   "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

      d.   "guaranteed to keep your dog healthy, happy and strong."

138.   Defendants, including its agents and distributors, also made untrue, deceptive, and misleading assertions and representations about the Contaminated Dog Foods by making and repeating the various statements about the alleged quality, characteristics, and capabilities of the Contaminated Dog Foods referenced herein.

139.   As a result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiffs.

140.   As a direct and proximate result of Defendants' violations of the FSAA, Plaintiffs and the Class have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by dogs of their Contaminated Dog Foods described herein.

141.   Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the FSAA.

## COUNT V

**Violation of Minnesota Prevention of Consumer Fraud Act Minn. Stat. § 325F.68, *et seq*. Against Defendants on Behalf of the Class**

142.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

143.    Plaintiffs are residents of the State of Minnesota.

144.    Defendants are "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

145.    Defendants' advertisements and representations with respect to the Contaminated Dog Foods were made in connection with the sale of the Contaminated Dog Foods to Plaintiffs and the Class.

146.    Defendants knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of their Contaminated Dog Foods.   Specifically, Defendants falsely represented that its Contaminated Dog Foods are:

a.   natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

b.   contain "only 1 supplement – zinc";

c.   "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

d.   "guaranteed to keep your dog healthy, happy and strong."

147. Defendants intended for Plaintiffs and the Class to rely on and accept as true these advertisements and representations in deciding whether to purchase the Contaminated Dog Foods.

148. Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Contaminated Dog Foods' quality, ingredients, fitness for consumption and, by extension, the true value of the Contaminated Dog Foods. Plaintiffs and the Class relied on, and were in fact deceived by, Defendants' advertisements and representations with respect to the Contaminated Dog Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over competitors' dog foods.

149. As a result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the levels of heavy metals and/or BPA.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiffs.

150. As a direct and proximate result of Defendants' violations of the MPCFA, Plaintiffs and the Class have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the quality, ingredients, and fitness for consumption of their Contaminated Dog Foods described herein.

151. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MPCFA.

## COUNT VI

**Breach of Express Warranty Against Defendants on Behalf of the Class**

152.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

153.   Defendants marketed and sold their Contaminated Dog Foods into the stream of commerce with the intent that the Contaminated Dog Foods would be purchased by Plaintiffs and the Class.

154.   Defendants expressly warranted, advertised, and represented to Plaintiffs and the Class that their Contaminated Dog Foods are:

   a.   natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

   b.   contain "only 1 supplement – zinc";

   c.   "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

   d.   "guaranteed to keep your dog healthy, happy and strong."

155.   Defendants made these express warranties regarding the Contaminated Dog Foods' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Contaminated Dog Foods' packaging and labels.  These express warranties became part of the basis of the bargain Plaintiffs and the Class entered into upon purchasing the Contaminated Dog Foods.

156.   Defendants' advertisements, warranties, and representations were made in connection with the sale of the Contaminated Dog Foods to Plaintiffs and the Class.

Plaintiffs and the Class relied on Defendants' advertisements, warranties, and representations regarding the Contaminated Dog Foods in decided whether to purchase Defendants' products.

157.   Defendants' Contaminated Dog Foods do not conform to Defendants' advertisements, warranties and representations in that they:

    a.  are not natural or suitable for consumption by humans or canines;

    b.  contain levels of various heavy metals; and

    c.  contain levels of BPA.

158.   Defendants were on notice of this breach as they were aware of the included heavy metals and/or BPA in the Contaminated Dog Foods and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

159.   Privity exists because Defendants expressly warranted to Plaintiffs and the Class that the Contaminated Dog Foods were natural, suitable for consumption, and contained only meat, poultry, fish, and/or vegetables, and guaranteed to keep dogs healthy, happy, and strong.

160.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals, and/or BPA.

161.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT VII

**Breach of Implied Warranty of Merchantability
Against Defendants on Behalf of the Class**

162.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

163.    Defendants are merchants engaging in the sale of goods to Plaintiffs and the Class.

164.    There was a sale of goods from Defendants to Plaintiffs and the members of the Class.

165.    At all times mentioned herein, Defendants manufactured or supplied the Contaminated Dog Foods, and prior to the time the Contaminated Dog Foods were purchased by Plaintiffs and the Class, Defendants impliedly warranted to them that the Contaminated Dog Foods were of merchantable quality, fit for their ordinary use (consumption by dogs), and conformed to the promises and affirmations of fact made on the Contaminated Dog Foods' containers and labels, including that the food was:

    a.  natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

    b.  contain "only 1 supplement – zinc";

    c.  nutritious, superior quality, pure, natural, healthy and safe for consumption;

    d.  "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

e. "guaranteed to keep your dog healthy, happy and strong."

166. Plaintiffs and the Class relied on Defendants' promises and affirmations of fact when they purchased the Contaminated Dog Foods.

167. The Contaminated Dog Foods were not fit for their ordinary use, consumption by dogs, and did not conform to Defendants' affirmations of fact and promises as they contained heavy metals and/or BPA at material levels to a reasonable consumer.

168. The Contaminated Dog Foods that Defendants delivered to Plaintiffs and the Class also did not conform to affirmations of fact that they were natural because they contained the industrial chemical BPA.

169. Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or BPA.

170. Defendants were on notice of this breach as they were aware of the heavy metals and/or BPA included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

171. Privity exists because Defendants impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals or BPA.

172. As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods

that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and/or BPA.

173.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT VIII

**Fraudulent Misrepresentation Against Defendants on Behalf of the Class**

174.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

175.   Defendants falsely represented to Plaintiffs and the Classes that their Contaminated Dog Foods are:

    a.   natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

    b.   contain "only 1 supplement – zinc";

    c.   nutritious, superior quality, pure, natural,  healthy and safe for consumption;

    d.   "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

    e.   "guaranteed to keep your dog healthy, happy and strong."

176.   Defendants intentionally and knowingly made these misrepresentations to induce Plaintiffs and the Class to purchase their Contaminated Dog Foods.

177.   Defendants knew that their representations about the Contaminated Dog Foods were false in that the Contaminated Dog Foods contain levels of heavy metals and/or

BPA as well as chemical ingredients.   Defendants allowed their packaging, labels, advertisements, promotional materials, and website to intentionally mislead consumers, such as Plaintiffs and the Class.

178.   Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Contaminated Dog Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented and otherwise promoted the Contaminated Dog Foods, Plaintiffs and the Class's reliance on Defendants' misrepresentations was justifiable.

179.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

180.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IX

### Fraud by Omission Against Defendants on Behalf of the Class

181.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

182.   Defendants concealed from and failed to disclose to Plaintiffs and the Class that their Contaminated Dog Foods contained heavy metals and/or BPA.

183.   Defendants further concealed from and failed to disclose to Plaintiffs and the Class that their Contaminated Dog Foods contained chemical ingredients.

184.    Defendants were under a duty to disclose to Plaintiffs and members of the Class the true quality, characteristics, ingredients and suitability of the Contaminated Dog Foods because: (1) Defendants were in a superior position to know the true state of facts about their product; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Contaminated Dog Foods; and (3) Defendants knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Contaminated Dog Foods were misrepresented in the packaging, labels, advertising, and website prior to purchasing the Contaminated Dog Foods.

185.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Contaminated Dog Foods.

186.    Plaintiffs and the Class justifiably relied on the omissions of Defendants to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Contaminated Dog Foods, which is inferior than advertised and represented by Defendants.

187.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

188.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT X

**Negligent Misrepresentation Against Defendants on Behalf of the Class**

189.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

190.   Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, formulation, manufacture, marketing, distribution, and sale of the Contaminated Dog Foods.

191.   Defendants breached their duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling a product to Plaintiffs that is does not have the ingredients, qualities, characteristics, and suitability for consumption that Defendants' advertised and by failing to promptly remove the Contaminated Dog Foods from the marketplace or to take other appropriate remedial action.

192.   Defendants knew or should have known that the ingredients, qualities, and characteristics of the Contaminated Dog Foods were not as advertised or suitable for their intended use, consumption by dogs, and was otherwise not as warranted and represented by Defendants. Specifically, Defendants knew or should have known that: (1) the certain of the Contaminated Dog Foods were not natural because they contained levels of the chemical BPA; (2) the Contaminated Dog Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained high levels of heavy metals; and (3) and the Contaminated Dog Foods were otherwise not as warranted and represented by Defendants.

193.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods that is worth less than the price they paid and that they would not have purchased at all had they known they contained heavy metals and/or BPA.

194.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT XI

### Unjust Enrichment Against Defendants on Behalf of the Class

195.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

196.   Substantial benefits have been conferred on Defendants by Plaintiffs and the Class through the purchase of the Contaminated Dog Foods.  Defendants knowingly and willingly accepted and enjoyed these benefits.

197.   Defendants either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Contaminated Dog Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

198.   Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the Class.

199.    Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

200.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Contaminated Dog Foods until the levels of heavy metals and/or BPA are removed or full disclosure of the presence of such appear on all labels, packaging and advertising;

C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Minnesota law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: October 17, 2018                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                           By:  s/ Rebecca A. Peterson
                                           ROBERT K. SHELQUIST, #21310X
                                           REBECCA A. PETERSON, #0392663
                                           100 Washington Avenue South, Suite 2200
                                           Minneapolis, MN 55401
                                           Telephone: (612) 339-6900
                                           Facsimile: (612) 339-0981
                                           E-mail: rkshelquist@locklaw.com
                                                   rapeterson@locklaw.com

                                           GUSTAFSON GLUEK, PLLC
                                           DANIEL E. GUSTAFSON, #202241
                                           KARLA M. GLUEK, #238399
                                           RAINA C. BORRELLI, #392127
                                           Canadian Pacific Plaza
                                           120 South 6th Street, Suite 2600
                                           Minneapolis, MN 55402
                                           Telephone: (612) 333-8844
                                           Facsimile: (612) 339-6622
                                           E-mail: dgustafson@gustafsongluek.com
                                           kgluek@gustafsongluek.com
                                           rborrelli@gustafsongluek.com


                                           ROBBINS ARROYO LLP
                                           KEVIN A. SEELY (199982)
                                           STEVEN M. MCKANY (271405)
                                           600 B Street, Suite 1900
                                           San Diego, CA 92101
                                           Telephone: (619) 525-3990
                                           Facsimile: (619) 525-3991
                                           E-mail:  kseely@robbinsarroyo.com
                                                    smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:   jdepalma@litedepalma.com
           scruzhodge@litedepalma.com

ANDREWS DEVALERIO LLP
Glen Devalerio
Daryl Andrews
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
E-mail: glen@andrewsdevalerio.com
           daryl@andrewsdevalerio.com

POMERANTZ LLP
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
E-mail:  gfbruckner@pomlaw.com
           sjadams@pomlaw.com

**Attorneys for Plaintiffs**

Filed in District Court
State of Minnesota
10/17/2018 3:39 PM

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Minn. Stat. §549.211,

sanctions may be imposed if the Court finds violation of this section.


Dated: October 17, 2018              By:    s/ Rebecca A. Peterson
                                          Rebecca A. Peterson, ##0392663