# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER SONG AND SCOTT WERTKIN, on behalf of themselves and all others similarly situated, | Court File No. 18-cv-03205-PJS-KMM |
| Plaintiffs, | |
| v. | |
| CHAMPION PETFOODS USA, INC. and CHAMPION PETFOODS LP, | |
| Defendants. | |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS'
# MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     SUMMARY OF FACTUAL ALLEGATIONS ........................................ 2

        A.     Heavy Metals ................................................................................ 3

        B.     BPA ............................................................................................... 4

        C.     Pentobarbital ................................................................................ 4

        D.     Non-Fresh Ingredients ................................................................ 6

        E.     Non-Regional Ingredients .......................................................... 7

III.    LEGAL STANDARD ............................................................................... 7

        A.     Legal Standard for a Well-Pled Complaint ................................ 7

        B.     Plaintiffs Satisfy Their Pleading Burden .................................... 8

IV.     ARGUMENT ............................................................................................ 9

        A.     Plaintiffs Have Sufficiently Alleged They Were Harmed by Defendants .... 9

        B.     Plaintiffs' Allegations Sufficiently Demonstrate That Defendants'
               Advertising Statements Are Misleading .................................... 12

               1.     Falsity Cannot Be Determined on a Rule 12(b)(6) Motion ............ 12

               2.     Defendants' Misrepresentations Are Actionable ............................ 13

        C.     Defendants' Factual Rendition Fails to Overcome Plaintiffs'
               Allegations .................................................................................. 15

               1.     The Promise of "Fresh" is False and Misleading ............................ 15

               2.     The Promise of "Regional" is False and Misleading ...................... 19

               3.      "Biologically Appropriate" is False and Misleading ..................... 20

4.      "Nourish as Nature Intended" and "Delivering Nutrients Naturally" are False and Misleading ................................................. 24

D.      Plaintiffs' Claim Under the Minnesota Commercial Feed Law Should Not Be Dismissed ....................................................................... 25

E.      Plaintiffs' Negligence Claim (Count II) Is Not Barred By The Economic Loss Doctrine ............................................................................... 26

F.      Plaintiffs Adequately Plead Breach Of Express And Implied Warranty .... 27

G.      Plaintiffs' Unjust Enrichment Claim Is Properly Pled ............................... 29

V.      CONCLUSION ...................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                               Page(s)

*Ackerman v. Coca-Cola Co.*,
  No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ..................... 17, 18

*Adkins v. Nestle Purina Petcare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) ............................................................ 25

*Am. Italian Pasta Co. v. New World Pasta Co.*,
  371 F.3d 387 (8th Cir. 2004) ........................................................................ 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 8, 9

*Awnings v. Fullerton*,
  912 F.3d 1089 (8th Cir. 2019) ........................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................*passim*

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*,
  No. 4:15 CV 384 RWS, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ....................... 14

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .......................................................................... 8

*Buetow v. A.L.S. Enterprises, Inc.*,
  259 F.R.D. 187 (D. Minn. 2009) .................................................................... 11

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) .......................................................... 25

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*,
  911 F.2d 242 (9th Cir. 1990) ......................................................................... 24

*Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*,
  603 N.W.2d 336 (Minn. Ct. App. 1999) ........................................................ 14

*Drobnak v. Andersen Corp.*,
    561 F.3d 778 (8th Cir. 2009) ................................................................................. 28

*Duxbury v. Spex Feeds, Inc.*,
    681 N.W.2d 380 (Minn. Ct. App. 2004) .............................................................. 26

*First Nat. Bank of St. Paul v. Ramier*,
    311 N.W.2d 502 (Minn. 1981) .............................................................................. 30

*Florenzano v. Olson*,
    387 N.W.2d 168 (Minn. 1986) .............................................................................. 16

*Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*,
    352 F. Supp. 3d 901 (D. Minn. 2018) .................................................................. 30

*Glick v. W. Power Sports, Inc.*,
    944 F.3d 714 (8th Cir. 2019) ................................................................................... 8

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................... 18

*Hamilton v. Palm*,
    621 F.3d 816 (8th Cir. 2010) ................................................................................ 12

*Higgins v. Harold-Chevrolet-Geo, Inc.*,
    No. A04-596, 2004 WL 2660923 (Minn. Ct. App. Nov. 23, 2004) ...................... 10

*Holman v. CPT Corp.*,
    457 N.W.2d 740 (Minn. Ct. App. 1990) .............................................................. 29

*In re K-tel Int'l, Inc. Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ................................................................................ 13

*In re SciMed Sec. Litig.*,
    No. CIV. 3-91-575, 1993 WL 616692 (D. Minn. Sept. 29, 1993) ........................ 10

*Iowa League of Cities v. E.P.A.*,
    711 F.3d 844 (8th Cir. 2013) ................................................................................ 13

iv

*Johnson v. Bobcat Co.*,
  175 F. Supp. 3d 1130 (D. Minn. 2016) .......................................................... 13

*Kalmes Farms, Inc. v. J-Star Indus., Inc.*,
  No. CIV.02-1141 (DWF/SRN, 2004 WL 114976 (D. Minn. Jan. 16, 2004)................ 27

*LensCrafters, Inc. v. Vision World, Inc.*,
  943 F. Supp. 1481 (D. Minn. 1996) ............................................................... 16

*Leppert v. Champion Petfoods USA Inc.*,
  No. 18-CV-4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ..............................*passim*

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 9

*McGregor v. Uponor, Inc.*, No. CIV 09-1136 ADM/JJK,
  2010 WL 55985 (D. Minn. Jan. 4, 2010) ....................................................... 13

*Meyer v. Dygert*,
  156 F.Supp.2d 1081 (D. Minn. 2001) ............................................................ 14

*Mitchell v. Blue Cross Blue Shield of N. Dakota*,
  953 F.3d 529 (8th Cir. 2020)........................................................................ 10

*Motley v. Homecomings Fin., LLC*,
  557 F. Supp. 2d 1005 (D. Minn. 2008) .......................................................... 30

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ................................................................................. 8, 9

*Peterson v. Bendix Home Sys., Inc.*,
  318 N.W.2d 50 (Minn. 1982)........................................................................ 11

*Podpeskar v. Makita U.S.A. Inc.*,
  247 F. Supp. 3d 1001 (D. Minn. 2017) .......................................................... 28

*Radford v. Kanabec Cty. of Minnesota*,
  No. 12-CV-1998 SRN/LIB, 2014 WL 359342 (D. Minn. Feb. 3, 2014)...................... 16

*Reitman v. Champion Petfoods USA, Inc.*,
   No. CV181736DOCJPRX, 2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) .................... 18

*Rojas v. General Mills, Inc.*,
   No. 12-cv-05099-WHO, 2014 WL 1248017 (N.D. Cal. March 26, 2014)................... 25

*Select Comfort Corp. v. Baxter*,
   156 F. Supp. 3d 971 (D. Minn. 2016) ........................................................................ 24

*State by Humphrey v. Philip Morris Inc.*,
   551 N.W.2d 490 (Minn. 1996)................................................................................... 11

*Thunander v. Uponor, Inc.*,
   887 F.Supp.2d 850 (D. Minn. 2014) .......................................................................... 11

*Tuttle v. Lorillard Tobacco Co.*,
   377 F.3d 917 (8th Cir. 2004)...................................................................................... 14

*Villa Lara v. LG Elecs. U.S.A., Inc.*,
   No. CV 17-5222 (JRT/KMM), 2018 WL 3748177 (D. Minn. Aug. 7, 2018).............. 28

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..................................................................................................... 9

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)...................................................................................... 18

*Wisdom v. First Midwest Bank, of Poplar Bluff*,
   167 F.3d 402 (8th Cir. 1999)........................................................................................ 9

*Worden v. Gangelhoff*,
   308 Minn. 252, 241 N.W.2d 650 (1976)..................................................................... 26

**Statutes**

Minn. Stat. §8.31 ............................................................................................................. 11

Minn. Stat. §25.31 ........................................................................................................... 26

Minn. Stat. §25.32 ........................................................................................................... 25

Minn. Stat. §325D.13 ........................................................................................... 14

Minn. Stat. §325D.44 ................................................................................. 15, 17, 20

Minn. Stat. §325F.67 .................................................................................. 14, 17, 20

Minn. Stat. §325F.69 ........................................................................................... 14

Minn. Stat. §604.101 ........................................................................................... 26

## **Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 7

Fed. R. Civ. P. 8(d)(2) ........................................................................................... 30

## I.      INTRODUCTION

This is a consumer protection case about false and misleading packaging of ultra-premium dog food sold by Champion Petfoods USA Inc. and Champion Petfoods LP ("CPF" or "Defendants"). Defendants' packaging promises superior quality, natural, healthy, safe, and pure dog food with a significant price tag. As a result, Plaintiffs Jennifer Song and Scott Wertkin ("Plaintiffs"), and the proposed consumer class, paid more for Defendants' Orijen and Acana branded dog food ("Dog Food") than they would have if Defendants' packaging was not false or misleading. Defendants now move to dismiss Plaintiffs' Second Amended Complaint ("SAC") in its entirety. However, Plaintiffs' SAC adequately alleges that Defendants sell the Dog Food using false and/or misleading packaging. Specifically, Plaintiffs allege that Defendants' packaging falsely or misleadingly claims that their Dog Food is "Biologically Appropriate", made with "Fresh Regional Ingredients," will "Nourish as Nature Intended," and is capable of "Delivering Nutrients Naturally." CPF made these promises without ever disclosing that the Dog Food contained and/or had a material risk of containing undisclosed non-conforming contaminants and ingredients, such as heavy metals, Bisphenol A ("BPA"), pentobarbital, and non-fresh ingredients such as expired ingredients, refreshed ingredients, frozen ingredients, and regrinds, and/or non-regional ingredients. CPF made these material misrepresentations and omissions intentionally and for a very specific purpose: to attract "Pet Lovers" who would pay ultra-premium prices for the Dog Food.

The liability theory of this case is simple and clear—to hold CPF accountable for the false and misleading packaging that fails to fully disclose that CPF's Dog Food

1

contains, or presents a risk of containing, heavy metals, BPA, pentobarbital, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to Defendants' grandiose packaging promises. The SAC alleges that Plaintiffs and the proposed class members were damaged by purchasing the Dog Food at ultra-premium prices that they would not have paid had they been fully informed and not misled by Defendants' packaging. In seeking dismissal here, Defendants invert the applicable legal standard and ask this Court to ignore Plaintiffs' factual allegations and instead adopt Defendants' own view of their packaging claims, but Plaintiffs' SAC alleges that Defendants engaged in a far-reaching and misleading marketing campaign. The facts supporting these claims, taken as true, support the causes of action in the SAC and Defendants' motion to dismiss Plaintiffs' SAC should be denied.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Plaintiffs seek to hold CPF accountable to Minnesota consumers for misrepresenting the Dog Food as "Biologically Appropriate," containing "Fresh Regional Ingredients," that it will "Nourish as Nature Intended," and that it "Deliver[s] Nutrients Naturally.," as well as for omitting that the Dog food contains, or has a material risk of containing, heavy metals, BPA, pentobarbital, and/or non-regional and non-fresh ingredients. ECF No. 31 at ¶¶2-3 ("Second Amended Class Action Complaint" or "SAC").

CPF targets consumers it identifies as "Pet Lovers." *Id.* at ¶¶25-26. These consumers are willing to pay premium prices for dog foods that contain large amounts of natural, fresh, and locally or regionally sourced meat and fish ingredients. *Id.* CPF designed its packaging claims to communicate and represent to these consumers that its

2

dog food possessed these desired qualities. *Id.* at ¶¶27–47. Thus, the material misrepresentations and omissions alleged in the SAC were reasonably relied upon by Plaintiffs and the proposed class when purchasing the Dog Food, and Plaintiffs had no knowledge of the falsity of the Dog Food packaging. *Id.* at ¶¶203-211. Here, CPF mischaracterizes Plaintiffs' factual and legal claims.

A.    **Heavy Metals**

As explained in the SAC, the presence of heavy metals and CPF's failure to adequately test for heavy metals is misleading based on CPF's packaging claim of "Biologically Appropriate" and "Fresh" and is a material omission from CPF's packaging. *Id.* at ¶¶67-71.  CPF knew or should have known that the Dog Food contained and/or had a material risk of containing heavy metals.  *Id.* at ¶¶53-58, 64-68, Exhibit 2.  However, CPF deceptively omitted this information.  *Id.* at ¶¶77, 85.

CPF also knew or should have known that the presence of heavy metals in the Dog Food was preventable.  *Id.* at ¶¶56-58.  For instance, although CPF used non-fresh ingredients that are well-known for high levels of heavy metals, such as fish oil and fish meals, it failed to prevent or minimize the amount of heavy metals in its Dog Food.  *Id.* at ¶¶72-73, 75-83. In fact, CPF's employees even referred to the goal of obtaining "no … heavy metals" in the Premium Priced Dog Food as a "key differentiator" for their "Fresh Regional Ingredients" claim.  *Id.* at ¶64.  Yet, CPF did nothing to limit or prevent the inclusion of heavy metals, despite representations that led consumers to believe CPF's products did not contain or have a material risk of containing heavy metals.

3

### B.   BPA

Similarly, the SAC explains that several of CPF's at-issue packaging claims are misleading because the Dog Food contains and/or have a material risk of containing BPA. *Id.* at ¶¶86-98.   Consumers, like Plaintiffs, were deceived by the Dog Food's packaging claims of "Nourish as Nature Intended" and "Delivering Nutrients Naturally," which are contrary to the undisclosed presence and/or material risk of containing BPA, an unnatural and non-nutritious contaminant. *Id.* at ¶147.   Likewise, CPF's claims of using "Fresh Regional Ingredients" in its "Biologically Appropriate" Dog Food were misleading for similar reasons.   *Id.* at ¶90.   Despite CPF's representations and the known risk of BPA, CPF did not test for BPA nor did it require its suppliers to test for BPA.   *Id.* at ¶88.   CPF also did not disclose the material risk or presence of BPA, which is material to the purchasing decisions of consumers regardless of whether the dog food possesses harmful levels of BPA.   *Id.* at ¶¶92, 98.

### C.   Pentobarbital

The SAC details how CPF knew or should have known that the Dog Food contained and/or had a material risk of containing pentobarbital[1] since at least 2016.   *Id.* at ¶¶149-186.   The presence, or risk of the presence, of pentobarbital is contrary to the "Biologically Appropriate," "Fresh" and natural claims on the Dog Foods' packaging. As early as February 2017, and again in February 2018, CPF was on notice that pentobarbital adulteration was a well-known risk, and internally discussed that other dog food companies

---

[1] Pentobarbital is a Class II controlled substance (typically used to euthanize animals) that renders dog food adulterated in any amount.   SAC at ¶150.

encountered issues and recalls after using pentobarbital-adulterated ingredients.  *Id.* at ¶¶156-157.  CPF also questioned its ability to verify that pentobarbital was excluded from its beef tallow.  *Id.*  Although CPF was aware it should monitor, audit, or verify that the Tallow Supplier was ensuring that pentobarbital was excluded from its beef tallow, it did not.  *Id.* at ¶161.[2]  For instance, CPF considered tallow a high-risk ingredient, which typically required annual audits, but did not audit its Tallow Supplier in 2016 or 2017.  *Id.* at ¶¶16166.  When CPF did finally audit its Tallow Supplier in 2018, it noted that a corrective action was necessary to address buildup of other products on equipment and spilled product on floors—which creates a potential cross-contamination with raw materials that contained pentobarbital.  But CPF failed to follow-up with its Tallow Supplier.  *Id.*

Unsurprisingly, on May 7, 2018, government agencies notified CPF that it purchased beef tallow that had tested positive for pentobarbital from its Tallow Supplier in March of 2018.  *Id.* at ¶168.  CPF concluded that over 1.7 million pounds of its Red Meat diets had been manufactured with the beef tallow containing pentobarbital.  *Id.* at ¶169.[3] Further, CPF allowed unsuspecting consumers to purchase over 100,000 pounds of the Red Meat diets that were manufactured with the adulterated beef tallow.  *Id*. at ¶174. Previously, from November 2017 to February 2018, when it was not auditing its Tallow Supplier, CPF also purchased from it over 282,000 pounds of beef tallow that contained

---

[2] "Tallow Supplier" refers to one of the large rendered ingredient suppliers for tallow purchased by CPF from August 2016 to May 2018.
[3] "Red Meat" diets include Acana Appalachian Ranch, Acana Heritage Meats, and Orijen Regional Red.  *See id.* at ¶149 n. 7.

and/or had a material risk of containing pentobarbital. *Id.* at ¶182. Thus, Plaintiffs allege that ***all*** of the Red Meat Diets that CPF manufactured using the beef tallow purchased from its Tallow Supplier from August 2016 until May 2018 contained and/or had a material risk of containing pentobarbital. *Id.* at ¶¶182-184.

### D.    Non-Fresh Ingredients

Plaintiffs allege that CPF's "Fresh Regional Ingredients" packaging claim is misleading because CPF uses non-fresh ingredients and deceptively omits these non-fresh ingredients from the Dog Food packaging. *Id.* at ¶99. For example, regrinds[4] are a major, and undisclosed, ingredient in the Dog Food. *Id.* at ¶¶100-106. Similarly, CPF dog food also omits that it contains and/or has a material risk of containing frozen and expired ingredients, as well as non-fresh ingredients that are "refreshed" by vendors, all of which are misleading based on CPF's packaging claims. *Id.* at ¶¶111-115.[5] Furthermore, CPF's "Fresh Regional Ingredients" packaging claim is further misleading to consumers because CPF's animal ingredient inclusion rate claims overstate the amount of fresh meat and fish ingredients in the Dog Food. *Id.* at ¶¶143-148. Consequently, CPF has deceived consumers into purchasing its Dog Food unaware that the products contain the aforementioned non-conforming ingredients.

---

[4] Regrinds are rejected dog and cat food that is twice-cooked, non-fresh, and has lost nutritional value and taste. *Id.* at ¶100.

[5] While CPF contends that it discloses frozen ingredients on the Dog Food by describing them as "raw," CPF fails to recognize that a reasonable consumer does not consider the terms "frozen" and "raw" to be interchangeable or understand that "raw" means frozen. *Id.* at ¶¶115-116.

### E.      Non-Regional Ingredients

Additionally, CPF's packaging deceptively emphasizes its use of regional ingredients, while omitting that it regularly uses non-regional ingredients sourced from places such as Peru, Morocco, Denmark, Chile, the European Union, China, India, New Zealand, and Australia. *Id.* at ¶125. Indeed, this is a prevalent practice. Approximately 25% of CPF ingredients were sourced internationally and 70% were purchased from outside Kentucky, where CPF has manufactured the Dog Food since 2016. *Id.* at ¶130.

CPF's Featured Farmers advertising and imagery also deceptively conveys to consumers that CPF purchases its ingredients from local ingredient suppliers. *Id.* at ¶134. However, like CPF's omissions regarding its use of non-regional ingredients, CPF's Featured Farmers imagery omits the fact that CPF purchases a small minority of their ingredients from these suppliers. *Id.* at ¶¶137-142. Instead, the majority of CPF's ingredients come from undisclosed farmers that are omitted from the Dog Food packaging. *Id*. Thus, CPF deceived and induced consumers to purchase the Dog Food by misleading consumers to believe that the Dog Food was made from local or regional ingredients provided by trusted, family-owned farmers, ranchers, and fisheries. *Id.*

## III.   LEGAL STANDARD

### A.      Legal Standard for a Well-Pled Complaint

Rule 8(a)(2) requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant receives "fair notice" of the claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); Fed. R. Civ. P. 8(a)(2). Plaintiffs must plead "enough facts to state a claim for relief that is plausible on its face."

*Id.* at 570. A claim is factually plausible when a plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As articulated by the Eighth Circuit, "[t]he plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility. It is not, however, a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). The facts a plaintiff pleads are taken as true and "a judge's disbelief of a complaint's factual allegations" may not be the basis of a dismissal. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), *superseded by statute; quoted with approval* in *Twombly*, 550 U.S. at 556.

## B.    Plaintiffs Satisfy Their Pleading Burden

It is settled that the Court must accept Plaintiffs' factual allegations as true at the pleading stage. *See, e.g., Neitzke*, 490 U.S. at 327. But Defendants distort this standard, asserting the alleged facts are false. ECF No. 34, at 5-11 ("Mem. at __"). Plaintiffs' claims cannot and should not be dismissed based on Defendants' interpretation of the facts. The factual allegations are to be accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party. *See e.g., Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). Defendants contend that Plaintiff's factual allegations lack support, but the Court's function on a Rule 12(b)(6) motion is not to weigh evidence, but rather to construe the pleadings liberally and "assume the truth of…factual allegations. "*Awnings v. Fullerton*, 912 F.3d 1089, 1101 (8th Cir. 2019); *see also Twombly*, 550 U.S. at 555 (stating that allegations in a complaint must be construed "on the assumption that all…are true (even if doubtful in fact)").

The SAC contains more than 200 factual allegations, which demonstrate Defendants' Dog Food's packaging is false and misleading. Defendants, however, spend the majority of their motion *disputing* those facts. Indeed, Defendants focus on their belief that "none of the four statements on Champion's packaging is deceptive or misleading." Mem. at 15. That is ultimately for a jury to decide. For the purposes of this Motion, the Court must accept the facts alleged by Plaintiffs as true. *See, e.g., Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999). Accepting Plaintiffs' well-plead and extensive allegations as true, as the Court must do here, the SAC states plausible claims for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Neitzke*, 490 U.S. at 327.

## IV.   ARGUMENT

### A.   Plaintiffs Have Sufficiently Alleged They Were Harmed by Defendants

In arguing that Plaintiffs have not alleged a cognizable injury under any of their twelve claims, Defendants appear to challenge Plaintiffs' Article III standing. However, Article III standing simply requires: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury is likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). This is a minimum constitutional mandate that must be resolved before the courts may entertain a suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In this case, Plaintiffs have constitutional standing by virtue of the injuries they have suffered as a result of Defendants' false and misleading Dog Food packaging, detailed above and in their SAC. To be clear, Plaintiffs' theory of harm is that, had they known that the misrepresentations identified in the complaint were untrue, and had they know the material information that CPF omitted from

the packaging, they would not have paid a price premium for the Dog Food, or would not have purchased it at all. *See, e.g.* SAC at ¶¶193-194. This loss of the benefit of the bargain, i.e. the difference between the Dog Food that Plaintiffs reasonably believed they purchased and the Dog Food they actually received, is sufficient injury to satisfy Article III standing. *See Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529, 536 (8th Cir. 2020) (in the context of a breach of contract claim, the plaintiff "has a judicially cognizable injury for standing purposes because the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain,") (internal quotation marks omitted); *In re SciMed Sec. Litig.*, No. CIV. 3-91-575, 1993 WL 616692, at *2 (D. Minn. Sept. 29, 1993) (finding standing established for fraud claims where the injury alleged was "the difference between the purchase price and the actual value of the date of discovery of the fraud."). There can be little doubt that Plaintiffs have alleged injury such that they have Article III standing.

Even if the Court interprets Defendants' argument as going directly to the injury element of any of Plaintiffs' specific claims, Plaintiffs' claims survive. In their argument, CPF not only misstates the law but also ignores a key component of Plaintiffs' legal theory-CPF's material omissions. Plaintiffs allege that they were damaged by both CPF's the misrepresentations and omissions on the Dog Food packaging and, absent those misrepresentations and omissions, they would not have paid the ultra-premium price for the Dog Food. This is the appropriate measure of damages for Plaintiffs' claims, and these allegations establish injury to Plaintiffs. *See Higgins v. Harold-Chevrolet-Geo, Inc.*, No. A04-596, 2004 WL 2660923, at *3 (Minn. Ct. App. Nov. 23, 2004) (under Minnesota law,

"fraud damages are generally measured… [as] the difference between the amount the defrauded person paid for merchandise and the actual value of the merchandise, plus any other damages proximately caused by the fraud."); *Buetow v. A.L.S. Enterprises, Inc.*, 259 F.R.D. 187, 192 (D. Minn. 2009) (out-of-pocket damages are recoverable under Minnesota's consumer protection statutes and are "calculated…by determining the difference between the value of the property and the price paid."); *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 53 (Minn. 1982) (breach of warranty damages are "the difference in value between the goods as accepted and what they would have been worth as warranted," citing the UCC). Additionally, the Minnesota consumer fraud statutes explicitly allow private actions to seek damages for violations of those statutes, and thus standing is statutorily granted. *See State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) (finding that Minn. Stat. §8.31, subd. 3a "contains its own legislative grant of standing" and allows "any person likely to be damaged by a deceptive trade practice of another" to seek damages and other equitable relief.)

Defendants attempt to turn this case into one about personal injury to Plaintiffs' dogs, but that is simply not what is alleged. As discussed above, economic harm resulting from purchasing a falsely advertised or warranted product is sufficient to establish injury under Plaintiffs' claims. Unlike in *Thunander v. Uponor, Inc.*, 887 F.Supp.2d 850 (D. Minn. 2014), cited by CPF, this case is not about a defective product or the risk that a defect will manifest. Nowhere do Plaintiffs allege that CPF's Dog Food was so dangerous that it harmed their dogs. Rather, Plaintiffs claim that CPF misled them about the true contents of the Dog Food and, had they known that the alleged misrepresentations were untrue or

11

that the Dog Food had a risk of containing heavy metals, BPA, pentobarbital, non-fresh, and non-regional ingredients, they would not have chosen to pay the ultra-premium price that Defendants charge for the Dog Food. *See, e.g.* SAC at ¶¶193-194. Moreover, Defendants' argument centers around their claim that Plaintiffs' allegations are solely related to substances that create a risk of harm. Mem. at 13-14. That is not so. For example, CPF's use of non-regional ingredients and non-fresh ingredients does not pose any risk of harm to dogs, yet these claims are central to Plaintiffs' allegations of injury. SAC at ¶¶99-142 (allegations that CPF's "Fresh Regional Ingredients" claim is false and misleading and that CPF failed to disclose its consistent use of non-fresh and non-regional ingredients). This is not a product defect case where Plaintiffs allege some latent defect in the Dog Food-this is a classic false advertising case for which Plaintiffs have adequately alleged both Article III and statutory standing for their claims.

**B.     Plaintiffs' Allegations Sufficiently Demonstrate That Defendants' Advertising Statements Are Misleading**

**1.     Falsity Cannot Be Determined on a Rule 12(b)(6) Motion**

In asking the Court to dismiss Plaintiffs' claims that "Biologically Appropriate," "Fresh Regional Ingredients," "Nourish as Nature Intended," and "Delivering Nutrients Naturally" are false and misleading, Defendants improperly ask this Court to decide a factual issue. As noted above, the Court's function at this stage is to determine whether a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). The issue in reviewing the sufficiency of the SAC is not whether the Plaintiffs will prevail, but

12

whether the Plaintiffs are entitled to offer further evidence to support their claims. Therefore, Defendants' arguments premised on falsity are premature and improperly require the Court to ignore the plausibility standard. *See, e.g., Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013)  ([A]t the pleading stage a petitioner can move forward with "general factual allegations of injury," whereas to survive a summary judgment motion, he "must set forth by affidavit or other evidence specific facts.") (citation omitted). "Generally, the issue of whether a public statement is misleading is a mixed question of law and fact for the jury." *In re K-tel Int'l, Inc. Sec. Litig.,* 300 F.3d 881, 897 (8th Cir. 2002). Whether the misrepresentations on the Dog Food packaging that Plaintiffs challenge are false and misleading cannot be decided by the Court on a motion to dismiss, and thus Defendants' arguments (which misstate the factual allegations and are simply disagreements with Plaintiffs' interpretation of the facts) are unpersuasive.

## 2.      Defendants' Misrepresentations Are Actionable

CPF argues that the SAC should be dismissed because it believes its packaging is not deceptive or misleading. Mem. at 14-30. However, the facts as alleged by Plaintiffs show otherwise, and this Court has allowed actions which allege similar value and quality assurances to move forward. *See McGregor v. Uponor, Inc.*, No. CIV 09-1136 ADM/JJK, 2010 WL 55985, at *9 (D. Minn. Jan. 4, 2010) (denying motion to dismiss plaintiff's allegation that defendant had not sufficiently tested product advertised as having passed rigorous quality standards); s*ee also Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1146 (D. Minn. 2016) (finding that misrepresentations had been sufficiently plead where Plaintiff identified a specific promotional material as well as particularized content); *see*

13

*also Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *7 (E.D. Mo. June 10, 2015) (holding that where allegations of misleading packaging depend on what a reasonable consumer would understand, extrinsic evidence of consumer impact must be considered and resolution on a motion to dismiss is therefore improper).

And, rather than base their arguments on the law, Defendants instead misrepresent and cherry-pick Plaintiffs' factual allegations. At its heart, this case is rooted in Minnesota's consumer protection law. Defendants make no mention of the elements of those claims for obvious reasons- Plaintiffs' factual allegations are clearly sufficient to state a claim under those laws. *See* Minn. Stat. §325D.13 (MUTPA, which prohibits sellers from "knowingly misrepresent[ing]… the true quality, ingredients, or origin of such merchandise"); Minn. Stat. §325F.67 (MFAA prohibits any advertisement that "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading"); *Tuttle v. Lorillard Tobacco Co*., 377 F.3d 917, 927 (8th Cir. 2004) (to prove a violation of the MFAA, the plaintiff must show that the defendant had the intent to publish false and misleading advertisements and there is a casual nexus between the act and the harm); Minn. Stat. §325F.69 (MPCFA prohibits the use of any "misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."); *Meyer v. Dygert*, 156 F.Supp.2d 1081, 1086 (D. Minn. 2001) (MPCFA "does not require the making of an intentional misrepresentation" and is "intended to be broader [than] the common law fraud cause of action, and [] is remedial in nature and should thus be liberally construed."); *Dennis*

*Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) (citing Minn. Stat. §325D.44 (7), (13)) (the MUDTPA defines deceptive practices to include, "misrepresenting the standard quality or grade of a good, and any other conduct which similarly creates likelihood of confusion or of misunderstanding."); *Claybourne v. Si Imsland*, 414 N.W.2d 449, 451 (Minn. Ct. App. 1987) (the MUDTPA "does not require actual confusion or misunderstanding for a violation to be found and relief granted. The mere likelihood of such confusion is sufficient.").

The SAC provides detailed and well-pled allegations, stating enough facts to state a claim to relief that is plausible on its face, thus justifying denial of Defendants' Motion. *Twombly*, 550 U.S. at 570.

### C.   Defendants' Factual Rendition Fails to Overcome Plaintiffs' Allegations

Defendants argue that Plaintiffs' claims alleging that that "Biologically Appropriate," "Fresh Regional Ingredients," "Nourish as Nature Intended," and "Delivering Nutrients Naturally" are false and misleading must be dismissed because those statements are actually true. However, in arguing this, Defendants blindly ignore the SAC's allegations. CPF's (unsurprising) disagreement with Plaintiffs' allegations is, unfortunately for them, not a valid legal basis on which to dismiss Plaintiffs' claims.

### 1.   The Promise of "Fresh" is False and Misleading

Plaintiffs have sufficiently pled facts that Defendants' representations that they use "fresh" ingredients are demonstrably false, and Plaintiffs suffered a pecuniary loss as a result. A misrepresentation is a false or misleading statement that induces the recipient to

act or refrain from acting, and is actionable when it is made when the speaker "knows or believes the matter is not as he or she represents it to be" or "speaks positively and without qualification, but either is conscious of ignorance of the truth, or realizes that the information on which he or she relies is not adequate or dependable enough to support such a positive, unqualified assertion." *Radford v. Kanabec Cty. of Minnesota*, No. 12-CV-1998 SRN/LIB, 2014 WL 359342, at *17 (D. Minn. Feb. 3, 2014) (quoting *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986)). In order to show that a defendant has a made a false representation, a plaintiff need only offer proof that the representation has the capacity to deceive, despite "whether or not any person has in fact been misled, deceived, or damaged thereby." *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1488 (D. Minn. 1996).

Here, the Dog Food purchased by Plaintiffs is littered with promises of "fresh" ingredients, attracting customers who are concerned about the quality of the ingredients used in their dogs' food. SAC at ¶¶25-27, 38, 48-50. Defendants claim the representations on their packaging regarding fresh ingredients were not misleading because the packaging never represents that their Dog Food contains "exclusively" fresh ingredients. Mem. at 9. But that is not Plaintiffs' allegation nor is it a necessary one to state a plausible claim. Defendants used the term "fresh" in a general manner to describe the Dog Food's ingredients, making representations such as, "fresh ingredients from our region that are ranched, farmed or fished" by people Defendants know and trust. SAC at ¶50.

Even if Defendants ultimately are correct, which Plaintiffs dispute, and a reasonable consumer would not expect all of the Dog Food ingredients to be fresh, that consumer

certainly would not expect the use of expired ingredients (*id.* at ¶99), frozen ingredients (*id.* at ¶115-116), refreshed ingredients (frozen ingredients that would be thawed out by suppliers and sent back to defendants for use) (*id.* at ¶113), or regrinds, which are out-of-specification dog and cat food that was twice-cooked and nutritionally deficient (*id.* at ¶104). Despite promises of fresh ingredients, Plaintiffs allege the use of expired and refreshed ingredients was a prevalent practice in Defendants' Dog Food. *Id.* at ¶111. Defendants also regularly incorporate regrinds into their Dog Food, sometimes at a higher percentage than many other ingredients. *Id.* at ¶106. Indeed, Defendants used millions of pounds of regrinds during the Class Period. *Id.* at ¶105. As stated above, Defendants also used tallow, another non-fresh ingredient, for years, despite the fact that it contained and/or had a material risk of containing pentobarbital from euthanized (also not "fresh") animals. *Id.* at ¶153-158, 162. Defendants also do not use the represented amount of fresh meat and fish ingredients identified on Orijen Regional Red packaging or Orijen Six Fish Packaging. *Id.* at ¶133, 138-139, 142. Given these facts, Plaintiffs have certainly shown there is a "likelihood of confusion" as to whether "Fresh" is truthful and that it is, at best, misleading. *See e.g.* Minn. Stat. §325D.44; Minn. Stat. §325F.67.

Yet, Defendants claim their misleading promise of "fresh" ingredients is somehow cured by conflicting statements found on the back of the packaging and ingredient panels. Mem. at 25. This reasoning has been rejected by courts on multiple occasions. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient

list in small print on the side of the box.") (alteration in original); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014). Additionally, the presence of a nutritional panel will not as a matter of law extinguish the possibility that reasonable consumers could be misled by the representations made on Defendants packaging. *See Ackerman*, 2010 WL 2925955, at *16. Rather, courts have noted that a reasonable consumer would expect that the ingredient list contains more detailed information about the product that would confirm other representations on the packaging. *See Williams*, 552 F.3d at 939-40. Plaintiffs' allegations that Defendants' use of regrinds, expired ingredients, refreshed ingredients, and frozen ingredients, among the other facts noted above, supports the existence of a plausible claim for relief. *See Reitman v. Champion Petfoods USA, Inc.*, No. CV181736DOCJPRX, 2019 WL 1670718, at *4 (C.D. Cal. Feb. 6, 2019) ("Reitman Order") (Whether the food is 'biologically appropriate' or made from '*fresh regional* ingredients' can be proven through discovery. It is a closer call as to 'a natural source of virtually every nutrient your dog needs to thrive' and 'guaranteed to keep your dog healthy, happy and strong,' but such statements do convey to consumers that the pet foods are safe, nutritious, and natural. As pled, the claims are actionable."); *see also Leppert v. Champion Petfoods USA Inc.,* No. 18-CV-4347, 2019 WL 216616, at *7 (N.D. Ill. Jan. 16, 2019) ("[T]he statements that the cat food is 'biologically appropriate' and made from '*fresh regional* ingredients' are assertions of fact.").

Furthermore, Defendants' "Biologically Appropriate" and "Fresh Regional Ingredients" claims were misleading due to the presence and/or material risk of containing

heavy metals and pentobarbital. The presence and/or material risk of heavy metal presence also renders these two marketing claims misleading because the Dog Food contained more heavy metals than fresh, Biologically Appropriate ingredients. These allegations are more than sufficient to withstand Defendants' motion.

### 2.    The Promise of "Regional" is False and Misleading

Plaintiffs have sufficiently pled facts and evidence that Defendants' representations that they use "regional" ingredients is false and misleading. Defendants continually emphasized their regional ingredients and suppliers. SAC at ¶¶50, 123-142. However, Defendants did not disclose all the non-regional sources for their "regional" ingredients, even though they knew that consumers cared about the sourcing of regional ingredients. Defendants nevertheless intentionally created an impression that all ingredients in their Dog Food were regional unless otherwise disclosed. *Id.* at ¶¶134-135. In reality, Defendants sourced a majority of their ingredients from non-regional suppliers (*id.* at ¶130), including from China and India, despite their assurances to the contrary. *Id.* at ¶126. Defendants knew that consumers could be misled into thinking that all the undisclosed non-regional ingredients were indeed regional. *Id.* at ¶133.

Defendants also did not source a material amount of their advertised fresh, local, or regional ingredients from their "Featured Farmers." *Id.* at ¶137. Although Defendants' packaging represented a small, local farmer as its exemplar supplier for fresh, Kentucky beef used in Orijen regional Red, Defendants source 70% of their ingredients outside Kentucky, including the majority of its beef. *Id.* at ¶¶130-131. This fact further supports Plaintiff's allegations that Defendants intentionally misled consumers to drive sales. *Id.* at

¶¶52, 188, 197, 216, 341, 344, 351. The truth is that Defendants did not source a significant amount of ingredients from many, if not most, of its "exemplar suppliers" featured on its packaging to promote its promise of regional ingredients. *Id.* at ¶130. Again, with these facts, Plaintiffs have shown there "Regional" causes a "likelihood of confusion" and is "misleading" and their claims should not be dismissed. *See, e.g.* Minn. Stat. §325D.44; Minn. Stat. §325F.67

As discussed above, the pervasiveness of the term "regional" on Defendants' Dog Food packaging and the context in which that term is used supports Plaintiffs' misrepresentation claims. Defendants' packaging repeatedly states that its Dog Food is made with ingredients from trusted regional suppliers when Defendants in fact used non-regional ingredients from all over the world. SAC at ¶¶122-144. Because the SAC alleges facts which, taken as true, demonstrate that Defendants' labels were deceptive and misleading, Defendants' Motion should be denied.

### 3.      "Biologically Appropriate" is False and Misleading

Defendants represent on their packaging that the Dog Food is "Biologically Appropriate" with an emphasis on biologically appropriate meat and fish ingredients. SAC at ¶35, 146. This statement is a "fact[] that cannot be dismissed as mere puffery or opinion[s]" *Reitman* Order at 7. Plaintiffs have sufficiently pled facts and evidence that Defendants' representation that its Dog Food is "Biologically Appropriate" is false because of the presence, or risk of, heavy metals, BPA, and pentobarbital. *See* SAC at ¶185. CPF created the "Biologically Appropriate" term as a marketing concept to convey that the Dog Foods contain large amounts of fresh meat and fish sourced from local or regional farmers,

ranchers, an fisheries and to get consumers to believe that the Dog Foods are made with ingredients that are fresh, natural and nourishing. *Id.* at ¶¶28-29. However, Defendants knew, or should have known, that the Dog Food was at risk of containing heavy metals, and thus not "Biologically Appropriate" as advertised. Beyond the evidence showing that the finished Dog Food contains heavy metals, *see id.* at Ex. 2, Defendants conducted their own testing of their ingredients and found that many of their dried and frozen ingredients contained significant amounts of heavy metals whereas the "Biologically Appropriate" ingredients like chicken, beef, and pork meat did not. *Id.* at ¶¶82-83. CPF itself does not believe that the presence of heavy metals is "Biologically Appropriate" given its goal to have no heavy metals in its products. *Id.* at ¶64. Similarly, the presence, or risk of presence of BPA, which is not "Biologically Appropriate," has been sufficiently alleged, including with testing results. *See id.* at Ex. 2. The presence or risk of this non-naturally occurring industrial chemical is certainly not "Biologically Appropriate." *Id.* at ¶87. Regardless of whether the levels of heavy metals present in CPF's Dog Food are safe for consumption (a question not presented by this litigation), a reasonable consumer could still find that the Dog Food is not "Biologically Appropriate" because these contaminants do not provide any nourishment and CPF does nothing to control, eliminate, or reduce the risk of heavy metals in the Dog Food despite its high quality claims

Additionally, as alleged in the SAC, the potential risk of pentobarbital has long been an issue. *Id.* at ¶¶155-159. As early as November 2017, Defendants were aware of pentobarbital contamination in other pet foods and that Defendants could be using the same vendor that supplied the tainted ingredient. *Id.* at ¶¶182-184. Defendants were aware that

21

they should test their food for the presence of pentobarbital at the time (*id.* at ¶152) but did not. *Id.* at ¶¶183-184. Defendants also did not audit their Tallow Supplier from 2016 to 2017 despite the fact that it was a high-risk rendering facility. *Id.* at ¶161. When Defendants did finally audit their Tallow Supplier in 2018, they noted that a corrective action was needed for buildup of other products that on equipment and product spilled on floors, presenting a cross-contamination issue. Yet, despite being on notice of their supplier's failure to prevent cross-contamination, Defendants did nothing to follow-up or demand corrective action. *Id.* at ¶¶165-167.

From November 2017 to February 2018, Defendants received approximately 282,000 pounds of tallow from their Tallow Supplier (*Id.* at ¶182), all of which had a risk of containing pentobarbital because several samples of tallow from this same time period tested positive for pentobarbital. *Id.* Additionally, this presented a risk for pentobarbital contamination and exposed Defendants' beef tallow to pentobarbital adulteration for years. *Id.* Although Defendants received repeated red flags that tallow received from Tallow Supplier may be contaminated with pentobarbital, they did not conduct any testing prior to 2018, nor did they implement any additional quality control safeguards to control, test, or verify that Tallow Supplier was effectively preventing Defendants' beef tallow from becoming adulterated with pentobarbital, despite the known risk. *Id.* at ¶¶164-167. Defendants allowed over 100,000 pounds of Dog Food in retail stores even though they knew contained some level of pentobarbital and sold over 10,000 pounds of pentobarbital contaminated regrinds as an ingredient. *Id.* at ¶174.

22

Finally, Plaintiffs allegations regarding CPF's misleading animal ingredient inclusion rate as represented in its "Meat Math" is simply additional evidence that Biologically Appropriate is false or misleading. Plaintiffs specifically allege that Defendants' recipes show that they are not using the amount of fresh meat or fish as advertised. *See* SAC at ¶¶143-148. These allegations are not "conclusory" as Defendants claim, but rather properly based on information and belief, and must be taken as true for the purposes of this motion.[6]

Defendants dispute these facts, but taken as true, they demonstrate that Defendants' packaging stating that their Dog Food is "Biologically Appropriate," given the contamination or risk of contamination with pentobarbital, was false and misleading. Again, the issue here is not the level of danger posed by the pentobarbital, but rather that CPF's use of this particular supplier that resulted in a specific known incident of pentobarbital contamination is simply further evidence that Defendants' "Biologically Appropriate" claim is false and misleading. Plaintiffs have made sufficient allegations to proceed with these claims and should have the opportunity to develop and present factual evidence showing that "Biologically Appropriate" is misleading, causes a likelihood of confusion, and that reasonable consumers like Plaintiffs relied on Defendants' Biologically Appropriate misrepresentation and would have behaved differently had they known the truth, such as the risk of heavy metals, BPA, and pentobarbital in the Dog Food.

---

[6] Contrary to Defendants' suggestion, Plaintiffs' consumer protection claims based on Defendants' misrepresentations do not require Plaintiffs to allege some sort of "duty" by CPF to prevent heavy metals, BPA and pentobarbital from being present in the Dog Food. Mem. at 16.

### 4.     "Nourish as Nature Intended" and "Delivering Nutrients Naturally" are False and Misleading

The Dog Food claims to "Nourish as Nature Intended" and that it "Deliver[s] Nutrients Naturally," but these claims are false and misleading given the risk of, or actual presence of, BPA and pentobarbital, neither of which are naturally-occurring substances. SAC at ¶¶87, 150. These misrepresentations are not puffery, as CPF contends. Puffery includes "exaggerated statements of bluster or boast upon which no reasonable consumer would rely" and "vague or highly subjective claims of product superiority, including bald assertions of superiority." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390–91 (8th Cir. 2004). Far from being vague, subjective, or exaggerated, these misrepresentations (made directly on the packaging of the Dog Foods) were relied on by Plaintiffs when purchasing the Dog Foods. *See, e.g.* SAC at ¶¶188, 210. In fact, "false descriptions of specific or absolute characteristics of a product," such as CPF's objectively measurable natural claims, are not puffery. *Select Comfort Corp. v. Baxter*, 156 F. Supp. 3d 971, 992 (D. Minn. 2016), on reconsideration in part, No. CV 12-2899 (DWF/SER), 2016 WL 6246765 (D. Minn. Oct. 25, 2016)

In the context of food, the terms "nutritious," and "nourishing" all essentially mean containing substances necessary for growth and health or beneficial to health, without artificial aid. These are factual statements tied to nutritional value of the Dog Foods.  None of these terms are "outrageous" or "so exaggerated as to preclude reliance by consumers." *Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Rather, a reasonable consumer could plausibly rely on these statements to

mean that the product either is healthy or, at least, would not harm their health. *See, e.g. Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer, and therefore cannot be puffery."). Thus, statements that convey factual representations about the safety and quality of the Dog Foods to the consumer, and therefore cannot be puffery. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (finding that the term "wholesome" cannot be deemed to constitute non-actionable puffery); *Rojas v. General Mills, Inc.*, No. 12-cv-05099-WHO, 2014 WL 1248017, at *4 (N.D. Cal. March 26, 2014) (concluding that the terms "100% natural" and "all natural" were not mere puffery). These claims can be proven either true or false by Plaintiffs showing that the Dog Foods contain, or have a risk of containing (or Defendants countering that evidence), BPA and pentobarbital. Plaintiffs' SAC provides detailed and well-pleaded allegations, stating enough facts to state a claim to relief that is plausible on its face, thus justifying denial of Defendants' Motion. *Twombly*, 550 U.S. at 570.

### D. Plaintiffs' Claim Under the Minnesota Commercial Feed Law Should Not Be Dismissed

Plaintiffs have sufficiently alleged facts that CPF manufactured, distributed, marketed, and sold misbranded and adulterated commercial feed under the Minnesota Commercial Feed Law ("MCFL"). ¶¶237, 240. While Defendants claim that Plaintiffs may not bring this claim under the MCFL because the statute states that the Commissioner of Agriculture "shall administer" the applicable sections (Minn. Stat. § 25.32; Mem. at 30), there is no law supporting the contention that courts have interpreted this statute as granting

power exclusively to the Commissioner to bring claims regarding commercial feeds and pet foods.

While it is true that there is no express provision of the MCFL authorizing a private right of action, courts have nonetheless sustained private actions brought under the MCFL in the past. *See, e.g., Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 384 (Minn. Ct. App. 2004) (plaintiff class of farmers brought suit against feed producer for adulterating feed alleging violations of the Minnesota Commercial Feed Law, among other claims); *see also Worden v. Gangelhoff*, 308 Minn. 252, 254, 241 N.W.2d 650, 651 (1976) (plaintiff brought suit under Minnesota Commercial Feed Law against company that supplied feed contaminated with lutefisk trimmings) (finding for defendant on other grounds). In line with the precedent of sustaining private claims under the MCFL, Defendants' motion should be denied.

### E. Plaintiffs' Negligence Claim (Count II) Is Not Barred By The Economic Loss Doctrine

Defendants' argument that Plaintiffs' negligence claim is barred by the economic loss doctrine once again demonstrates a basic misunderstanding of Plaintiffs' legal theory. Plaintiffs have not brought any "product defect tort claims," and Count II, which is Plaintiffs' negligence claim, does not sound in product defect and thus Minn. Stat. §604.101, subd. 3, does not apply. Mem. at 32. Rather, Count II is a negligence per se claim based in contract under Minn. Stat. §25.31, *et seq.*, which prohibits the manufacture or distribution of adulterated and misbranded food and is based on Plaintiffs' allegations that CPF "falsely represented" the features of the Dog Food because of the alleged

26

misrepresentations and omissions. SAC at ¶¶248-258. Nowhere in that claim (or in the SAC) do Plaintiffs claim that the Dog Food is defective or dangerous.

Moreover, Count II is properly viewed as a negligent misrepresentation claim, which is not barred by §604.10(e). *See Kalmes Farms, Inc. v. J-Star Indus., Inc.*, No. CIV.02-1141 (DWF/SRN, 2004 WL 114976, at \*6 (D. Minn. Jan. 16, 2004) ("§ 604.10(e) does not bar [plaintiff's] negligent misrepresentation claims. In Minnesota, fraud has been defined to include intentional, reckless, and negligent misrepresentations.").

### F.    Plaintiffs Adequately Plead Breach Of Express And Implied Warranty

Plaintiffs have alleged sufficient facts that Defendants breached their express and implied warranties to Plaintiffs and the Classes. SAC at ¶¶310-338. As demonstrated above, at all times during the Class period Defendants expressly and implicitly warranted, advertised, and represented misleading packaging claims that their Dog Food was "Biologically Appropriate," used "Fresh Regional Ingredients," would "Nourish as Nature Intended," and was capable of "Delivering Nutrients Naturally." *Id.* at ¶312. These warranties became part of the basis of the bargain Plaintiffs entered into with Defendants upon purchasing the Dog Food. *Id.* at ¶313. Defendants breached these warranties in that the Dog Food contained and/or had a material risk of containing heavy metals, BPA, non-fresh ingredients including regrinds and expired ingredients, non-regional ingredients, pentobarbital, and other ingredients or contaminants that do not conform to packaging claims. *Id.* at ¶315. Had Plaintiffs known about the inclusion of these contaminants and other non-conforming ingredients, they would not have purchased the Dog Food. ¶ *Id.* at

322. As such, they have incurred damages in that the Dog Food did not meet the advertised quality for which they paid a premium price. *Id.* at ¶321.

Defendants do not deny that they breached these warranties; instead, they spend the bulk of their argument claiming that Defendants did not receive the requisite notice of the breaches prior to filing of this lawsuit. Mem. at 33-35. However, Minnesota courts have noted that the notice requirement is "not so strict." *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1007 (D. Minn. 2017). Indeed, this Circuit has noted that "[t]he bar for sufficiency is low" when it comes to notice. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009). To satisfy the notice requirement, a seller must only be made aware that a buyer is unsatisfied with the product; the buyer need not notify the seller specifically that it has breached its warranty. *See Podpeskar*, 247 F. Supp 3d at 1007. Accepting (as this Court must) the allegations in the SAC as true, Defendants' argument is unpersuasive. Defendants had ample notice of their breaches, as they were aware *for years* that their Dog Food contained these non-conforming contaminants and ingredients, and still refused to remove the items from retail stores or offer customers refunds. SAC at ¶¶316, 124, 173-175. Defendants also had sufficient notice of these breaches because Plaintiffs filed their lawsuit within a reasonable time of discovering that Defendants had breached their warranties. *Id.* at ¶319.

Moreover, even where pre-suit notice is not given, warranty claims should not be dismissed where the defendant is not prejudiced by the failure to provide notice if a previously-filed lawsuit with the same (or similar) claims has already been brought. *Villa Lara v. LG Elecs. U.S.A., Inc.*, No. CV 17-5222 (JRT/KMM), 2018 WL 3748177, at *6

(D. Minn. Aug. 7, 2018) ("Villa Lara's delay in giving Defendants pre-suit notice is not a reason to dismiss Villa Lara's warranty claims because Defendants were not prejudiced by Villa Lara's delay given the earlier-filed [and related] *Hudock* action."). Here, as Defendants acknowledge, a materially similar lawsuit was filed in the Central District of California in April 2018 and, after Defendants objected on personal jurisdiction grounds, the Minnesota plaintiff from that case, Ms. Song, refiled in this Court along with Mr. Wertkin in November 2018. Mem. at 2; ECF No. 1. For Defendants to claim that they did not have notice of Plaintiffs' warranty claims is disingenuous, at best.

### G.    Plaintiffs' Unjust Enrichment Claim Is Properly Pled

A claim for unjust enrichment generally requires showing of (1) a benefit conferred upon the defendant by the plaintiff and (2) acceptance and retention by the defendant of the benefit such that it would be inequitable or morally wrong for defendant to retain the benefit. *See, e.g., Holman v. CPT Corp.*, 457 N.W.2d 740, 745 (Minn. Ct. App. 1990).

Here, the SAC contains all necessary allegations. Plaintiffs conferred a benefit on Defendant by paying a premium price for the Dog Food based on representations that the Dog Food was biologically appropriate, regionally sourced, and made from fresh ingredients. SAC at ¶¶22-31. As a result of these representations, Plaintiffs were led to believe that the Dog Food did not contain toxic or harmful substances such as heavy metals or pentobarbital. *Id.* at ¶¶189-195. Defendants appreciated and solicited the benefit they received because they targeted "Pet Lover" consumers that would, and did, pay the premium price for the Dog Food based on the misrepresentations and omissions. *Id.* at ¶¶ 25-27, 38, 48-50. Defendants acceptance and retention of the benefit would be unfair and

29

immoral in that Plaintiffs purchased products that were not as marketed, and Plaintiffs would not have bought the contaminated Dog Foods had the true quality and ingredients been disclosed. *Id.* at ¶¶13, 322.

A remedy at law is not an adequate remedy, as it does not go far enough in redressing Defendants' conduct or deterring Defendant and other feed distributors from acting similarly in the future. It would be "unjust" to allow Defendants to enjoy their profits earned as a result of acting "illegally or unlawfully." *First Nat. Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Further, the Federal Rules of Civil Procedure "expressly permit a party to plead alternative or inconsistent claims or defenses." *Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*, 352 F. Supp. 3d 901, 905 (D. Minn. 2018) (holding that, at the Motion to Dismiss stage, courts "routinely permit" a plaintiff to plead alternative theories of relief) (citing Fed. R. Civ. P. 8(d)(2)); *see also Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) ("Plaintiffs may plead their unjust-enrichment claim in the alternative to their breach-of-contract claim without fear of dismissal."). Dismissal of Plaintiffs' unjust enrichment claim would therefore be improper at this time.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion. If the Court is inclined to grant any portion of Defendants' Motion, Plaintiffs request leave to amend the SAC.

Dated:   June 22, 2020                    Respectfully submitted,

                                          GUSTAFSON GLUEK PLLC

                                          By:   s/Daniel E. Gustafson
                                          DANIEL E. GUSTAFSON (#202241)
                                          KARLA M. GLUEK (#238399)
                                          RAINA C. BORRELLI (#392127)
                                          Canadian Pacific Plaza
                                          120 South 6th Street, Suite 2600
                                          Minneapolis, MN 55402
                                          Telephone: (612) 333-8844
                                          Facsimile: (612) 339-6622
                                          E-mail: dgustafson@gustafsongluek.com
                                          kgluek@gustafsongluek.com
                                          rborrelli@gustafsongluek.com

                                          LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                          ROBERT K. SHELQUIST (#21310X)
                                          REBECCA A. PETERSON (#0392663)
                                          100 Washington Avenue South, Suite 2200
                                          Minneapolis, MN 55401
                                          Telephone: (612) 339-6900
                                          Facsimile: (612) 339-0981
                                          E-mail: rkshelquist@locklaw.com
                                          rapeterson@locklaw.com

                                          ROBBINS LLP
                                          KEVIN A. SEELY
                                          STEVEN M. MCKANY
                                          5040 Shoreham Place,
                                          San Diego, CA 92122
                                          Telephone: (619) 525-3990
                                          Facsimile: (619) 525-3991
                                          E-mail: kseely@robbinsllp.com
                                          smckany@robbinsllp.com

                                          CUNEO GILBERT & LADUCA, LLP
                                          CHARLES LADUCA
                                          KATHERINE VAN DYCK
                                          4725 Wisconsin Ave NW, Suite 200
                                          Washington, DC 20016
                                          Telephone: 202-789-3960

                                          31

Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
scruzhodge@litedepalma.com

WEXLER WALLACE LLP
KENNETH A. WEXLER
UMAR SATTAR
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wexlerwallance.com
us@wexlerwallace.com

***Attorneys for Plaintiffs and the Proposed
Classes***